**RESOLUTION TRUST CORPORATION, as Receiver for Meridian Savings Association**

v.

**OAKS APARTMENTS JOINT VENTURE, et al.**

**Civ. A. No. CA4–89–375–A.**

United States District Court, N.D. Texas, Fort Worth Division.

Dec. 6, 1990.

Dewey R. Hicks, Jr., Stephen G. Gleboff, Baker & McKenzie, Dallas, Tex., for plaintiff.

Robert L. Russell Bush, Bush, Whaley & Broome, Arlington, Tex., for defendants.

## MEMORANDUM OPINION

McBRYDE, District Judge.

Came on for trial on November 9, 1990, the above-styled and numbered action wherein Resolution Trust Corporation as receiver for Meridian Savings Association, as successor to Federal Savings and Loan Insurance Corporation as conservator for Meridian Savings Association, is plaintiff and Oaks Apartments Joint Venture (hereinafter "Oaks"), L. Glenn Terrell, Robert S. West, Brad L. Wilemon, Mike Gibson, H. Don Guion, Jr. (hereinafter collectively the "partners"), and Eric R. Veigel ("Veigel") are defendants. The parties appeared by and through their counsel of record and announced ready for trial.

Counsel for plaintiff and for defendant Veigel announced that a settlement had been reached as between those parties, as set forth in an agreed judgment presented to the court. Counsel for defendant Veigel further announced that said defendant did not wish to present any evidence in defense

of cross-claims by the Oaks and the partners and that judgment granting the claims of the Oaks and the partners for indemnity against defendant Veigel could be entered. Based upon these announcements, the court excused counsel for defendant Veigel and proceeded to trial on the remaining claims.

The case was tried, pursuant to the agreement of the parties, on stipulated facts set forth in a list of stipulated facts presented to the court at trial.[1] The stipulated facts are as follows:

1. Oaks and the partners executed a note in the "amount of $2,000,000.00 or so much thereof as may be advanced in accordance with the terms of a certain loan agreement of event date herewith" to Meridian Service Corporation on June 28, 1984. A true and correct copy of the note is attached as Exhibit "A" to plaintiff's original petition except that, at the time of signature, the note did not bear the language of assignment on the last page. Plaintiff is the owner of the note.

2. Oaks and the partners executed a deed of trust on June 28, 1984. A true and correct copy of the deed of trust is attached as Exhibit "B" to plaintiff's original petition.

3. The partners executed an unconditional guarantee of the note on June 28, 1984. A true and correct copy of this guaranty is attached as Exhibit "C" to plaintiff's original petition.

4. The $2,000,000.00 principal amount on the note was funded as directed by Oaks and the partners on or about June 29, 1984. A true and correct copy of the borrower's statement reflecting the distribution of the funds is attached as Exhibit 16 to the deposition of L. Glenn Terrell.

5. The partners were joint venturers in Oaks on June 24, 1984, and at all times material to this suit. A true and correct copy of the joint venture agreement is attached as Exhibit "B" to the response of each partner to plaintiff's first request for admissions and interrogatories.

6. Defendant Veigel purchased the apartment complex from Oaks in 1985.

7. Defendant Veigel and Meridian Savings Association entered into a modification of the note. A true and correct copy of this modification is attached to the first amended original answer and counterclaim of Oaks and the partners as Exhibit "A."

8. Thereafter, Oaks, the partners and defendant Veigel failed to make payment of principal and interest as required by the note.

9. Each of the defendants received written notice of default as set forth in a letter dated January 20, 1986, but actually mailed on or about January 20, 1987. A true and correct copy of this letter is attached to plaintiff's original petition as Exhibit "D."

10. Each of the defendants received written notice of acceleration dated February 9, 1987. A true and correct copy of this letter is attached to plaintiff's original petition as Exhibit "E."

11. Meridian Savings Association, on March 9, 1987, again gave defendants notice of default and acceleration and informed them that the apartment complex would be sold at foreclosure on April 7, 1987. A true and correct copy of this letter is attached as Exhibit "F" to plaintiff's original petition.

12. On April 7, 1987, Meridian Savings Association foreclosed on and sold the apartment complex at trustee's sale.

13. A deficiency of $755,249.06 remained after foreclosure.

14. No written agreement exists whereby Meridian Savings Association released Oaks and/or the partners from their obligations as makers and guarantors under the note.

15. On April 5, 1989, the Federal Home Loan Bank Board appointed the FSLIC conservator of Meridian Savings Association. The FDIC was appointed manager of the conservator.

16. On August 9, 1989, Resolution Trust Corporation succeeded the FSLIC as conservator of Meridian Savings Asso-

1. These are the same stipulated facts set forth in the amended pretrial order of October 11, 1990.

ciation under the Financial Institution's Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989) at § 401(a)(1).

17. On April 13, 1990, the Resolution Trust Corporation was appointed receiver of Meridian Savings Association.

18. Meridian Savings Association initially hired Brice & Mankoff to represent it in this matter.

19. Thereafter, Meridian Savings Association and the Resolution Trust Corporation hired Baker & McKenzie to represent it in this matter.

The Court adopts each of the stipulated facts, as set forth above, as a finding of fact by the Court. Each of the exhibits described in the foregoing stipulations was introduced by plaintiff as an exhibit at trial and admitted into evidence by agreement.

The issue in this case is whether the partners are jointly and severally liable for the entire amount outstanding on the note or whether each is liable only for twenty percent of the indebtedness. If the partners are each liable for only twenty percent of the amount outstanding, a further issue is whether plaintiff has charged usury by making demand on each partner for payment of the entire balance outstanding.

The note provides, in pertinent part:

FOR VALUE RECEIVED, THE OAKS APARTMENTS JOINT VENTURE, a Texas Joint Venture composed of ROBERT S. WEST, L. GLENN TERRELL, BRAD WILEMON, H. DON GUION, JR., AND MIKE GIBSON as joint venturers (all hereinafter referred to as "Maker"), promises to pay to the order of MERIDIAN SERVICE CORPORATION, a Texas Corporation (hereinafter collectively referred to as "Payee"), the sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) or so much thereof as may be advanced ...

. . . .

IN WITNESS WHEREOF, the undersigned has executed this note as of the day and year first above written.

The Oaks Apartments Joint Venture "Maker"

By: _____
    Robert S. West "Venturer"

_____
L. Glenn Terrell "Venturer"

_____
Mike Gibson "Venturer"

_____
H. Don Guion "Venturer"

_____
Brad L. Wilemon "Venturer"

The unconditional guaranty, executed at the same time the note was executed, provides in pertinent part:

WHEREAS, THE OAKS APARTMENTS JOINT VENTURE, a Texas Joint Venture, composed of ROBERT S. WEST, L. GLENN TERRELL, BRAD WILEMON, H. DON GUION, JR. AND MIKE GIBSON as Joint Venturers, of Tarrant County, Texas ("Borrower") desires to borrow from MERIDIAN SERVICE CORPORATION, ("Lender") from time to time (the "loan"), a principal sum not in excess of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00), such borrowings to be secured by, among other things, a Deed of Trust dated of even date herewith, from Borrower to FRANK R. JELINEK, Trustee, as Trustee (the "Deed of Trust") against the property described on Exhibit "A" attached hereto and incorporated herein for all purposes (the "Property"); and

WHEREAS, the undersigned desires Lender to make the aforesaid loan, and Lender requires, as a condition thereof, that a guaranty in the form hereof be executed and delivered by the undersigned;

. . . .

Notwithstanding the above and foregoing, it is expressly understood and agreed that the individual guarantors set forth below who have executed this instrument, shall be limited in their liability to the extent of 20% of the debt described herein, including interest and all costs incurred.

The guaranty is executed by each of the partners individually.

The partners argue that the note and guaranty must be read together as opera-

tive documents of the same transaction. They contend that, when read together, the documents reflect the parties' intent that the liability of the individual partners be limited. Otherwise, the guaranty would have no meaning and a cardinal rule of interpretation of contracts would be violated. Plaintiff, on the other hand, contends that the defense of limited liability is barred by *D'Oench Duhme* and by the federal holder in due course doctrine.

In *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the United States Supreme Court held that an obligor who lent himself to a scheme or arrangement that was likely to mislead bank examiners could not assert against FDIC any part of an agreement that might diminish the value of his written loan obligation. The defendant in *D'Oench* had executed a note in favor of a bank in order to deceive state regulators by falsely inflating the value of the bank's assets. The defendant and the bank agreed that the note would not be called for payment. The agreement was not reflected in the bank's records. Years later, when the bank failed, FDIC sued to collect on the note. The Supreme Court held for FDIC because it found that the statutory scheme establishing FDIC evidenced a federal policy to protect FDIC and the public against misrepresentations as to the assets in the portfolios of banks FDIC insured or to which it made loans. 315 U.S. at 457, 62 S.Ct. at 679. To effectuate federal policy, the Supreme Court devised a common law rule of estoppel precluding a borrower from asserting against FDIC defenses based on secret or unrecorded side agreements that altered the terms of facially unqualified obligations.

Courts that have followed *D'Oench* have applied its rule in cases in which the borrower was innocent of any wrongdoing. Rather than examine the motives of borrowers or banks, courts have focused on the likelihood of banking authorities being misled. *Bell & Murphy and Associates, Inc. v. InterFirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir.1990). The presumption in the Fifth Circuit is that if an obligor could assert an oral side agreement

reducing the value of the assets formerly held by a failed thrift, FDIC would be misled. *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989). Accordingly, such agreements cannot be asserted or enforced against FDIC or its successors. *Bell & Murphy*, 894 F.2d at 754.

■ The facts of this case do not fit within the parameters of the *D'Oench* rule. Here, the agreement limiting the liability of the individual partners is in writing and was executed at the same time as the note being sued upon. Although the record does not reflect whether the note and guaranty were found in the same file at the time Meridian Savings Association was taken over, that conclusion is inescapable. Both the note and guaranty were the subject of this suit in state court and both were attached as exhibits to plaintiff's original petition. Plaintiff should be estopped from claiming that the partners cannot rely on the guaranty when plaintiff itself relies on the guaranty as a basis for recovery in this action. More importantly, this is not a case where the borrower is attempting to assert a side agreement to reduce the value of an asset of a failed thrift. Unlike *D'Oench*, where the borrower sought to avoid liability on the note, the validity and enforceability of the note in this action are not in question. Accordingly, the partners are not estopped pursuant to *D'Oench* from asserting the limitation of their individual liability on the note.

Plaintiff's argument that the note must be interpreted solely from the four corners of the instrument without resort to contemporaneous documents is without merit. The liability of the maker of the note cannot be determined from the four corners because the note does not contain an obligation to pay a sum certain. Reliance must be had on other documents to determine the value of the note. The contemporaneous instruments, including the guaranty, must be construed together and given effect. *American Petrofina Co. of Texas v. Bryan*, 519 S.W.2d 484, 487 (Tex.Civ. App.—El Paso 1975, no writ).

■ The alternate theory asserted by plaintiff for defeating the limited liability

defense of the partners is the federal holder in due course doctrine. That doctrine holds that FDIC, as a matter of federal common law, enjoys the status of a holder in due course when it acquires a negotiable instrument. *FDIC v. Wood*, 758 F.2d 156, 159–161 (6th Cir.1985). Holder in due course status also extends to holders subsequent to FDIC. *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1249 (5th Cir.1990).

A holder in due course is one who takes a negotiable instrument[2] for value, in good faith, and without notice of any defense against it or claims to it. Tex.Bus. & Com. Code § 3.302(a) (Vernon 1968). Ordinarily, the doctrine does not apply when the holder acquires the instrument by taking it under legal process or as part of a bulk transaction not in the regular course of business of the transferor. Tex.Bus. & Com.Code § 3.302(c) (Vernon 1968). This limitation has been held not to apply to FDIC when it acquires the assets of a failed thrift. *Campbell Leasing*, 901 F.2d at 1249; *Wood*, 758 F.2d at 161.

The justification for according FDIC the status of a holder in due course is that to do so does not disrupt commercial relationships predicated on state law. As stated in *Wood:*

> A negotiable instrument is subject to transfer at any time, and the maker must always be aware that the transferee may be a holder in due course. From the maker's view, there is no difference between his bank failing and the note going to the corporate FDIC, and his bank failing after selling the note to a holder in due course. (citation omitted)

758 F.2d at 161. The Fifth Circuit has adopted this reasoning in *FSLIC v. Murray*, where the court eloquently recognized

that "clothing FSLIC with at least holder in due course status does not trample commercial expectations" of makers of negotiable instruments. 853 F.2d 1251, 1256–57 (5th Cir.1988).

■ Although the Fifth Circuit has, in subsequent opinions, referred broadly to "assets" acquired by FDIC rather than specifically referring to negotiable instruments in discussing the status of FDIC as a holder in due course, the court has not expanded the doctrine beyond negotiable instruments. The only case cited by plaintiff for the proposition that the federal holder in due course doctrine applies to assets other than negotiable instruments is *FDIC v. Gulf Life Insurance Co.*, 737 F.2d 1513 (11th Cir.1984). In *Gulf Life*, the Eleventh Circuit fashioned a new federal rule to apply when FDIC in its corporate capacity obtains an asset in the course of a purchase and assumption transaction. Such is not the case here. Plaintiff is the Resolution Trust Corporation as receiver for Meridian Savings Association. Moreover, there is no evidence that the takedown was a purchase and assumption transaction rather than a liquidation or that knowledge of the limited liability of the individual partners would have made any difference in FDIC's consideration of the assets and liabilities of Meridian Savings Association.

■ Finally, the court considers the usury defense asserted by the partners.[3] The essential elements of usury are: (1) a loan of money, (2) an absolute obligation to repay, and (3) the exaction of greater compensation than allowed by law for the use, forbearance or detention of the money. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982); *Stedman v. Georgetown Savings & Loan Association*, 595 S.W.2d 486, 489

---

2. To be negotiable, an instrument must be in writing, signed by the maker, contain an unconditional promise to pay a sum certain in money, on demand or at a definite time, to order or to bearer. Tex.Bus. & Com.Code § 3.104(a) (Vernon 1968); *Hinckley v. Eggers*, 587 S.W.2d 448, 450 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r. e.). The note in this case does not contain an obligation to pay a "sum certain", but rather "the sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) or so much thereof as may be advanced...."

3. Consideration of the usury defense is proper, as the court has determined that the *D'Oench* doctrine and federal holder in due course defenses do not apply in this action. Even if such defenses did apply and plaintiff was to be treated as a holder in due course, usury is a real defense that could be asserted by the partners. *Robinson v. Rudy*, 666 S.W.2d 507, 509 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

(Tex.1979). A contract that is not usurious on its face may be rendered usurious by a subsequent unilateral demand for payment of more than is legally owed. *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209, 212 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). Under Texas law, a demand letter may constitute a usurious charge of interest. *Danziger v. San Jacinto Savings Association*, 732 S.W.2d 300, 304 (Tex.1987); *Dryden v. City National Bank of Laredo*, 666 S.W.2d 213, 218–221 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Likewise, a petition or other pleading may constitute a usurious charge. *Danziger*, 732 S.W.2d at 304; *Rick Furniture Distributing Company v. Kirlin*, 634 S.W.2d 738, 740 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

■ The partners allege that the demand letters sent by plaintiff's predecessor as well as the pleadings filed by plaintiff constitute usurious charges of interest because they demand payment of five times as much as each partner is liable to pay pursuant to the note and guaranty. They rely on *Conte v. Greater Houston Bank*, 641 S.W.2d 411, 415 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) for the proposition that any sum charged in addition to the interest specified and the principal required to be repaid would have to be deemed a part of the consideration for the use of the money loaned, i.e. interest. The court does not interpret the statement made in *Conte* as broadly as do the partners. *Conte* merely holds that a fee that could not legitimately be claimed as a brokerage fee would be treated as interest for the purpose of determining whether a lender had exacted more compensation than allowed by law for the use of the money loaned.

As stated in *Steves Sash & Door Co. v. Ceco Corp.*, "principal" and "interest" are correlative terms and, by necessity, principal must be that amount that is used, forborne or detained and upon which interest is charged. 751 S.W.2d 473, 475 (Tex. 1988). Here, the parties agree that the interest charged on the amount loaned—the obligation to be repaid—is not usurious. Clearly, the demand for payment of all the principal and interest owed by Oaks is not

a demand for compensation for the use, forbearance or detention of the twenty percent owed by each partner. *See Tygrett v. University Gardens Home. Association*, 687 S.W.2d 481, 483 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) for a discussion of the definitions of use, forbearance, and detention.

Usury statutes are penal in nature and must be strictly construed. *Steves Sash & Door Co.*, 751 S.W.2d at 476. This court is not in a position to expand the definition of usury set forth in the statutes and interpreted by Texas courts as the partners would have the court do. The principal amount sought to be recovered by plaintiff is the amount loaned to the Oaks and the partners and the amount upon which interest has been charged. The court finds that the note is not usurious and that usury has not been demanded.

In accordance with the court's findings and conclusions set forth herein, the court will sign a judgment, which will provide as follows:

1. Plaintiff shall have and recover from Oaks, partners and Veigel, jointly and severally, the sum of ONE MILLION TWO HUNDRED FIFTY–TWO THOUSAND EIGHT HUNDRED FORTY–FOUR AND 39/100 DOLLARS ($1,252,844.39) plus post-judgment interest thereon at the rate of SEVEN AND 51/100 PERCENT (7.51%) per annum from date of judgment until paid; provided, however, that plaintiff shall not recover from any of the partners more than TWENTY PERCENT (20%) of the principal amount of $1,252,844.39 plus post-judgment interest on such twenty percent share. Plaintiff shall also have and recover from Veigel the additional sum of FIFTY THOUSAND FOUR HUNDRED EIGHTY–EIGHT AND 57/100 DOLLARS ($50,488.57) plus post-judgment interest thereon at the rate of SEVEN AND 51/100 PERCENT (7.51%) per annum from date of judgment until paid.

2. Plaintiff shall have and recover from Oaks, but not partners, as reasonable attorney's fees, the additional sum of SEVENTY–NINE THOUSAND FOUR HUNDRED FIFTY–NINE AND

NO/100 DOLLARS ($79,459.00) plus post-judgment interest thereon at the rate of SEVEN AND 51/100 PERCENT (7.51%) per annum from date of judgment until paid.

3. Oaks and partners each shall have and recover from Veigel sums equal to the amount of any payments made by them to plaintiff pursuant to this judgment together with post-judgment interest on each such payment at the rate of SEVEN AND 51/100 PERCENT (7.51%) per annum from date of such payment until reimbursement by Veigel.

4. Oaks and partners shall have and recover from Veigel, as reasonable attorney's fees, the additional sum of TWENTY-TWO THOUSAND THIRTEEN AND 75/100 DOLLARS ($22,013.75), together with post-judgment interest thereon at the rate of SEVEN AND 51/100 PERCENT (7.51%) per annum from date of judgment until paid.

5. Costs of court shall be paid TWENTY-FIVE PERCENT (25%) by plaintiff and SEVENTY-FIVE PERCENT (75%) by defendant Veigel.