United States Court of Appeals,

Fifth Circuit.

No. 91–1090.

RESOLUTION TRUST CORPORATION, as receiver for Meridian Savings Association, Plaintiff–Appellee, Cross–Appellant,

v.

OAKS APARTMENTS JOINT VENTURE, Eric R. Veigel, L. Glenn Terrell, Robert S. West, Brad L. Wilemon, Mike Gibson, and H. Don Guion, Jr., Defendants–Appellants, Cross–Appellees.

July 24, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, BROWN and SMITH, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This suit was originally filed by a savings and loan institution to enforce a promissory note and a contemporaneously created loan guaranty against Oaks Apartments Joint Venture (the Partnership), the five individual participants in the partnership (the Partners), and Eric R. Veigel (Veigel). Subsequently, the Resolution Trust Corporation (RTC) was appointed receiver of the savings and loan and ultimately became the successor in interest to the action. The RTC contends that each of the partners should be held jointly and severally liable for the entire amount of the note. However, the Partners argue that a liability limitation clause contained within the guaranty limits their individual liability to 20% of the total disbursement under the note. The district court determined that each partner's liability was limited by the terms of the Guaranty to 20% of the outstanding indebtedness on the Note. 753 F.Supp. 1332 (1990). The RTC subsequently appealed to this Court the judgment finding liability limitation. Not surprisingly, the RTC stands or falls on their assertion of the *D'Oench, Duhme* doctrine. Finding the record void of necessary facts needed to determine the applicability of the *D'Oench, Duhme* doctrine, we affirm in part, vacate in part, and remand for further proceedings.

Web of Default

The Partnership and the individual Partners executed a promissory note (the Note) in the

amount of two million dollars "or so much thereof as may be advanced in accordance with the terms of a certain Loan Agreement executed on even date herewith" to Meridian Service Corporation[1] (Meridian Savings) on June 28, 1984.[2] The Partnership used the money to purchase land and construct an apartment complex. At the same time, the Partners executed an unconditional personal guaranty (the Guaranty) of the Note. By the terms of the Guaranty, each partner's liability for the total amount of the simultaneously executed Note is limited to 20%.[3]

---

[1]Meridian Service Corporation is a wholly owned subsidiary of Meridian Savings Association. Both entities will be referred to hereafter as "Meridian Savings."

[2]The Note provides, in pertinent part:

> FOR VALUE RECEIVED, THE OAKS APARTMENTS JOINT VENTURE, a Texas Joint Venture composed of ROBERT S. WEST, L. GLENN TERRELL, BRAD WILEMON, H. DON GUION, JR., AND MIKE GIBSON as joint venturers (all hereinafter referred to as "Maker"), promises to pay to the order of MERIDIAN SERVICE CORPORATION, a Texas Corporation (hereinafter collectively referred to as "Payee"), the sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) or so much thereof as may be advanced in accordance with the terms of a certain Loan Agreement executed on even date herewith, with interest thereon at the rate provided below.

[3]The unconditional guaranty, executed at the same time the note was executed, provides in pertinent part:

> WHEREAS, THE OAKS APARTMENTS JOINT VENTURE, a Texas Joint Venture, composed of ROBERT S. WEST, L. GLENN TERRELL, BRAD WILEMON, H. DON GUION JR., AND MIKE GIBSON as Joint Venturers, of Tarrant County, Texas ("Borrower"), desires to borrow from MERIDIAN SERVICE CORPORATION, ("Lender"), from time to time, (the "Loan"), a principal sum not in excess of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00), such borrowings to be secured by; among other things, a Deed of Trust dated of even date herewith, from Borrower to FRANK R. JELINEK, Trustee, as Trustee (the "Deed of Trust") against the property described on Exhibit "A" attached hereto and incorporated herein for all purposes (the "Property"); and

> WHEREAS, the undersigned [partners] desires Lender to make the aforesaid Loan, *the Lender requires, as a condition thereof, that a guaranty in the form hereof be executed* and delivered by the undersigned (emphasis added);

> ....

> The Obligations of Guarantor and any other guarantor of the Note shall be *joint and several* (emphasis added).

> ....

> Notwithstanding the above and foregoing, it is expressly understood and

The Partnership sold the apartment complex to Eric Veigel in 1985. Veigel entered into an agreement with Meridian Savings modifying the time and manner of payment on the Note.

After payments required by the terms of the Note were not made, the Partnership, the Partners, and Veigel were issued written notice of default by Meridian Savings on January 20, 1986. The default was not cured and accordingly Meridian Savings, on February 9, 1987 and March 9, 1987, sent each of the defendants notice of acceleration and intent to foreclose.

Meridian Savings foreclosed on and sold the apartment complex at a trustee's sale on April 7, 1987. Following the foreclosure sale, a deficiency of $755,249.06 remained owing according to the Note. Except for the simultaneously created personal Guaranty, Meridian Savings never entered into any written agreement with any of the Partners which released the Partnership or the Partners from their obligations incurred as makers or guarantors under the Note.

## How Did We Get Here?

Meridian Savings originally filed this suit in state court on June 13, 1988 to recover the deficiency owed on the Note. The case was subsequently removed to United States District Court on May 5, 1989 by the Federal Savings & Loan Insurance Corporation (FSLIC) after it was appointed conservator for Meridian Savings by the Federal Home Loan Bank Board. The RTC was substituted as a party to this suit when it succeeded the FSLIC as conservator for Meridian Savings under the Financial Institution's Reform, Recovery and Enforcement Act of 1989 (FIRREA).[4]

The case was tried on the pleadings, stipulated facts, and exhibits. The district court

---

agreed that the individual guarantors set forth below who have executed this instrument, shall be limited in their liability to the extent of 20% of the debt described herein, including interest and all costs incurred.

[4]Pub.L. No. 101–73, Title IV, § 407, 103 Stat. 363 (abolishing FSLIC and transferring its functions to other federal agencies).

determined that each Partner's liability under the Note was limited by the Guaranty to 20% of the outstanding indebtedness under the Note. The district court also found that there had been no showing of a usurious charge based on the claims of Meridian Savings and the RTC that each partner was liable for payment of the entire outstanding balance.

*D'Oench, Duhme*:  Easier Done Than Said

Once again the doctrine developed through the controversial 1942 Supreme Court decision in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) is called upon to relieve a dispute between the successor in interest of a failed financial institution and one of its debtors. The *D'Oench, Duhme* decision and its progeny have developed a well known, though sometimes misunderstood, federal common law doctrine immunizing the FDIC and the RTC, as receivers and conservators of defunct financial institutions, from claims and defenses based upon agreements not firmly established in the failed financial institution's official records. *Bowen v. FDIC,* 915 F.2d 1013, 1015–16 (5th Cir.1990); *Beighley v. FDIC,* 868 F.2d 776, 783–84 (5th Cir.1989). In *D'Oench,* the Court held that an obligor who "lent himself to a scheme or arrangement whereby the banking authority ... was or was likely to be misled" may not assert against the FDIC any part of an agreement that might diminish the value of his written loan obligation. *D'Oench, Duhme,* 315 U.S. at 460, 62 S.Ct. at 681, 86 L.Ed. at 965. *D'Oench, Duhme* applies to bar defenses or claims against federal regulators in those instances where a financial institution enters into an oral or secret agreement with a borrower that alters the terms of an existing unqualified obligation. 315 U.S. at 460, 62 S.Ct. at 680, 86 L.Ed. at 965. The doctrine also precludes the enforcement of any defense or claim based upon a written agreement that is not found within the financial institution's records covering the instant financial transactions. This result has been frequently characterized as harsh when considered from the position of a well-intending borrower or lending institution lacking any suggestion of fraud or overreaching. However, *D'Oench, Duhme* provides well reasoned unchallengeable finality to the lender's books and records when used by regulatory agencies to assess the lending institution's degree of solvency.

At least two persuasive policy considerations have been recognized in support of the outcome achieved through the application of *D'Oench, Duhme.* In its decision of the seminal case, the Supreme Court recognized the need to protect the FDIC and the public funds which it administers against misrepresentations of the assets in the portfolios of the banks that it insures, inspects, or extends credit. 315 U.S. at 457, 62 S.Ct. at 679, 86 L.Ed. at 962.

The past and continuing demise of financial institutions straddles federal examiners and regulators with the heavy burden of reviewing and assessing the assets of more and more financial institutions. The *D'Oench, Duhme* doctrine allows examiners accurately to determine the health of institutions based on an examination of the formally maintained written records of the institution within the contemplation of *D'Oench, Duhme* without resorting to often incomplete recitations of oral agreements and previously undisclosed sidetrack concessions. In essence, the government is relieved of the burden of discovering agreements contained somewhere within the institution's general records as documentary proof of hidden liabilities or defenses.

The Supreme Court stated in *D'Oench, Duhme* that the doctrine's applicability depends upon whether or not the alleged agreement was "designed to deceive the creditors or the public authority or would have that effect." 315 U.S. at 460, 62 S.Ct. at 682, 86 L.Ed. at 963. If borrowers lend themselves in any way to a scheme or arrangement whereby the banking authority is or is likely to be mislead, the *D'Oench, Duhme* doctrine will prevent the enforcement of the agreement. *Bowen,* 915 F.2d at 1015; *Bell & Murphy & Assoc., Inc., v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 752–53 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). The doctrine neutralizes the defenses and claims of a borrower even though the borrower did not intend to deceive. *Bowen,* 915 F.2d at 1017.

The foregoing discussion of the ever-evolving *D'Oench, Duhme* doctrine provides the foundation of the RTC's cause of action. The RTC argues that since the Note itself does not directly

refer to a limitation of the Partners' liability as makers of the Note, the Note should stand alone as a separate agreement. That is, it contends that the simultaneously created personal Guaranty, limiting the Partners' individual liability, is a separate and distinct agreement that should not be read in conjunction with the Note. Accordingly, the RTC argues that the Partners' attempt to imply into the facially unqualified Note the limitation on liability contained within the Guaranty constitutes the equivalent of an unwritten side agreement that should be barred by *D'Oench, Duhme.*

While *D'Oench, Duhme* does require full and complete disclosure of agreements between lenders and borrowers, it does not require that such agreements be confined to the face of any one particular lending/borrowing document. The doctrine precludes enforceability of those side agreements that are either designed to deceive creditors and bank examiners or actually have that effect. The fact that an agreement between the failed lender and the borrower is manifested in more than one document does not automatically imply a deceptive secret agreement. After all, this court has previously rejected the argument that the *D'Oench, Duhme* doctrine prohibits claims and defenses based on written agreements that are integral to the loan transaction. *See FDIC v. Laguarta,* 939 F.2d 1231, 1238–39 (5th Cir.1991).[5]

## *D'Oench, Duhme* Quenched?

The District Court found that the Note and Guaranty complied with the requirements of *D'Oench, Duhme* and that, therefore, *D'Oench, Duhme* did not bar the defense raised by the Partners based upon the liability limitation clause contained within the Guaranty. We find the record to be lacking the necessary facts needed to determine whether or not the doctrine bars the Partners' limitation defense. Accordingly, we remand this portion of the District Court judgment for further proceedings.

---

[5]Moreover, *D'Oench, Duhme* has no application to the RTC's claim that the "side agreement" is the defendant's attempt during litigation to read two admittedly "nonsecret" documents together in such a way as to limit its liability. *See Laguarta,* 939 F.2d at 1239. Of course, any characterization of the Guaranty as "nonsecret" necessarily turns on where the Guaranty was filed, an entirely separate question which, in contrast, is ripe for a *D'Oench, Duhme* determination.

The list of stipulated facts submitted to the district court was not comprehensive enough to determine whether the requirements of the *D'Oench, Duhme* doctrine have been met. Whether or not *D'Oench, Duhme* has been satisfied hinges upon the ultimate determination of where the Guaranty was filed by Meridian Savings. The District Court must determine whether the Guaranty was part of the integral loan transaction files associated with the Note executed by the Partners.

The District Court limited its *D'Oench, Duhme* analysis to whether the Partners were attempting to avoid their liability on the Note. While shedding some light upon the Partners' motive in creating the Guaranty, a more penetrating inquiry is required. Clearly, the Partners were attempting to avoid unlimited personal liability for the total loan amount by including the liability limitation clause in the Guaranty. However, the facts presented to the district court did not disclose where the papers constituting the Guaranty were filed. Notwithstanding the District Court's "inescapable" conclusion that the Note and Guaranty were contained within the same loan file, neither party presented evidence that the Note and Guaranty were or were not part of integral loan documents kept in the same file. The record shows that District Judge McBryde asked whether or not the Guaranty was in the file with the Note and he was told that the stipulated facts simply do not indicate where or by whom the Guaranty was held.

Without this information we cannot determine whether the Guaranty was a secret side agreement between the Partners and Meridian Savings or whether it was in fact a valuable asset kept in tandem with the Note to ensure payment. On remand, the District Court needs to determine the circumstances surrounding the creation of the Note and the Guaranty and the handling of the papers by the lender thereafter. For example, if the Guaranty was in fact requested by Meridian Savings, it would, at least facially, support the conclusion that the Guaranty was conceived to benefit Meridian Savings. The Guaranty itself states that Meridian Savings required the Partners to execute the Guaranty as a condition of the loan disbursement. As an enhancement of Meridian Savings' rights under the loan transaction, the Guaranty would presumably be kept by the lender in the same file as

the integral papers of the loan transaction. But in any event, the Guaranty—to the extent of each partner's 20%—gave added security to the lender since the Guaranty, unlike the Note, expressly provided for joint and several liability.

As an asset to Meridian Savings, the Guaranty would be an important document used by the RTC to determine the health of the institution. If the Guaranty was in fact kept in the same loan file with the Note, presumably the RTC would have been aware of the liability limitation when assessing the solvency of Meridian Savings.

If the District Court determines that the Guaranty was in fact part of the integral loan transaction file, then the requirements of *D'Oench, Duhme* are satisfied, and the subsequent determination of whether or not the liability limitation clause within the Guaranty may be used to modify the terms of the Note would require the application of Texas laws governing contractual construction of simultaneously creat ed documents. On the other hand, if the District Court determines that the Guaranty was not contained within the loan transaction files, the requirement of *D'Oench* would not be met and the Partners' defense based upon the Guaranty would not be allowed, unless for some other reason *D'Oench, Duhme* would not apply.

As this Court has many times held, when an agreement between a borrower and a lender imposes mutual obligations to perform agreed-to requirements, and the lender does not fully perform, *D'Oench, Duhme* will not bar the borrower from asserting claims or defenses based upon the failure of the lender to satisfy his respective obligation.[6]

---

[6]*See, e.g., Howell v. Continental Credit Corp.,* 655 F.2d 743, 746–47 (7th Cir.1981) (*D'Oench, Duhme* does not serve as a bar where the document the FDIC seeks to enforce is one which facially manifests bilateral obligations and serves as the basis of the borrower's defense); *Bell & Murphy,* 894 F.2d at 754 (for defense to apply, regardless of *D'Oench, Duhme,* bank's obligation must appear on the face of the document which the FDIC seeks to enforce and document must be properly recorded in the bank's records); *Laguarta,* 939 F.2d at 1238–39 (*D'Oench, Duhme* does not bar defense based upon lender's failure to fulfill funding obligations spelled out in integral loan documents).

In order for this principle to apply, the mutual obligation must be in the written bank records and must state specifically the obligation incurred.  On remand, if the District Court determines that the requirements of *D'Oench, Duhme* have not been met because the Guaranty was not in the financial records of the loan transaction, the District Court should then determine whether or not the liability limitation clause amounts to a contractual obligation on the part of Meridian Savings which was not performed.  If, in fact, the District Court decides that the Guaranty created an obligation on the part of Meridian Savings to limit the personal liability of each partner to 20% of the outstanding debt, the Court must determine whether this obligation constitutes a mutual obligation not performed by the lender.  If so, *D'Oench, Duhme* will not bar the Partners' defense based on the Guaranty.

## *Duhme*'d by Statute

The statutory companion of the *D'Oench, Duhme* doctrine is 12 U.S.C. § 1823(e).  This section provides the RTC with the power to avoid any agreement that tends to diminish or defeat the interest of the RTC in any asset acquired by it as a receiver unless such agreement:  (1) is in writing, (2) was executed by the depository institution and the obligor contemporaneously with the acquisition of the asset, (3) was approved by the depository institution's board of directors or its loan committee, and (4) has been continuously an official record of the depository institution.[7]  Since the District

---

[7]12 U.S.C. § 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record

Court's factual inquiry on remand will undoubtedly uncover all necessary items needed for the application of *D'Oench, Duhme,* there is no reason at this time for us to consider, independently of *D'Oench, Duhme,* whether § 1823 is satisfied. This is especially so in light of no special findings by the District Court on compliance with § 1823.

Certain-ly Not

The RTC argues the alternative theory that the limited liability defense of the Partners should be barred by the federal holder in due course doctrine. This federal common law doctrine provides the FDIC with protection as a holder in due course when it acquires a negotiable instrument. *FDIC v. Wood,* 758 F.2d 156 (6th Cir.), *cert denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985).

This same protection is extended to the RTC when it acquires negotiable instruments as a subsequent holder from the FDIC. *FSLIC v. Mackie,* 949 F.2d 818, 824 (5th Cir.1992); *Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244, 1248 (5th Cir.1990).

The district court determined that the RTC did not qualify as a holder in due course because it concluded that the Note was not a negotiable instrument.[8] The district court based its decision upon its finding that the note failed to contain an unconditional promise to pay a sum certain. In his memorandum opinion, Judge McBryde stated:

> The note in this case does not contain an obligation to pay a "sum certain", but rather "the sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000) or so much thereof as may be advanced...."

753 F.Supp. at p. 1337 n. 2.

---

of the depository institution.

[8]To be negotiable, an instrument must be in writing, signed by the maker, contain an unconditional promise to pay a sum certain in money, on demand or at a definite time, to order or to bearer. Tex.Bus. & Com.Code § 3.104(a) (Vernon 1968); *Hinckley v. Eggers,* 587 S.W.2d 448, 450 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

Notwithstanding the RTC's argument that the sum certain requirement should be liberally construed, we agree with the finding of the district court and hold that the Note fails to demand the payment of a sum certain. The language employed by the Note fails to disclose the exact amount to be repaid by the Partners. The amount advanced to the Partners cannot be certainly determined absent an inquiry to other documents. Since the Note does not facially demand payment of a sum certain, the Note is non-negotiable. The RTC, therefore, cannot enjoy the protection provided to a holder in due course.[9] *Texas Refrigeration Supply, Inc. v. FDIC,* 953 F.2d 975, 980 n. 10 (5th Cir.1992); *Sunbelt Savings, FSB Dallas, Texas v. Montross,* 923 F.2d 353, 356 (5th Cir.), *aff'd, Resolution Trust Corporation v. Montross,* 944 F.2d 227 (1991) (en banc) (per curiam).[10]

---

[9]In rejecting the RTC's holder in due course status because the note is not a negotiable instrument, we do not base our view on the fact that the Note was a variable interest rate note. In fact, the Fifth Circuit recently certified to the Texas Supreme Court the question of whether a variable interest rate note demands a payment of a sum certain in order to be considered a negotiable instrument under Texas Law. *Ackerman v. FDIC,* 930 F.2d 3, 4 (5th Cir.1991), *certified question accepted sub nom., Amberboy v. Societe de Banque Privee,* 34 Tex.Sup.Ct.J. 690 (June 22, 1991). In its answer, not yet considered by the certifying Fifth Circuit Court, the Texas Supreme Court concluded that variable interest rate notes meet the sum certain requirements of Texas U.C.C. § 3.106 and are negotiable instruments. *Amberboy v. Societe de Banque Privee,* —— S.W.2d ——, ——, 35 Tex.Sup.Ct.J. 621, 625 (April 15, 1992).

Thus, the fact that the note was based upon a variable rate of interest does not, in and of itself, bar the RTC's claim to holder in due course status. Instead, because the portion of the Note dealing with the Note's principal describes the amount payable as two million dollars, "or so much thereof as may be advanced in accordance with the terms of a certain Loan Agreement executed on even date herewith," the Note, variable interest rate aside, is not a contract for a sum certain. Furthermore, the Texas Supreme Court in *Amberboy* did not venture to resolve the negotiability status of the note in its entirety because "a certified question is a limited procedural device that constrains us to answer only the question certified and nothing more." —— S.W.2d at ——, 35 Tex.Sup.Ct.J. at 625. After all, Texas law makes clear that a note, for it to be negotiable with respect to the interest, must first be negotiable with respect to the principal. *Hinckley v. Eggers,* 587 S.W.2d 448, 451 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

[10]Judge Gee's original panel opinion in *Montross* advanced this Court's view that holder in due course status should not be extended to the FDIC when it acquires a non-negotiable instrument. Judge Gee stated:

Extending holder in due course status to the FDIC and its successors respecting non-negotiable instruments is both unnecessary and undesirable.

*Montross,* 923 F.2d at 357.

Thus, on remand, the Partners are not limited by the federal holder in due course doctrine from asserting their liability limitation defense.

## Not Too Interesting

The Partners contend that the demand letters sent by Meridian Savings as well as the pleadings filed by the RTC constitute usurious charges of interest because they demand from each partner the entire amount of principal and interest owed by the Partnership under the terms of the Note. The Partners argue that the liability limitation in the Guaranty limits the amount owed by any one of the Partners to 20% of the total and any demand for payment exceeding such 20% is a usurious charge of interest. We agree with the district court in its finding that the Note is not usurious and that usury has not been demanded. Whatever the result of the District Court's factual inquiry on remand, the district court's decision barring the Partners' usury defense was correct and is affirmed.

## Final Words

We vacate the decision of the district court limiting the liability of the Partners and remand for further inquiry as to whether the Note and Guaranty fulfilled the requirements of *D'Oench, Duhme.* Specifically, the District Court should determine the circumstances surrounding the creation of the Note and the Guaranty and the handling of the papers by the lender thereafter. We affirm the District Court's denial of the RTC's holder in due course status, and affirm the District Court's decision barring the Partners' usury defense.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.