Opinion issued April 21, 2005












In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00790-CV




KENNETH W. ERICKSON, Appellant

V.

BANK OF AMERICA, N.A., Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2003-13916




MEMORANDUM OPINION
          The trial court rendered summary judgment against Kenneth W. Erickson and
in favor of Bank of America, N.A. (the “Bank”), awarding the Bank $138,056.74 plus
post-judgment interest and attorney’s fees on the Bank’s lawsuit for recovery of
money owed on a line of credit extended to Erickson. We affirm. 
BACKGROUND
          In November 1999, the Bank and Erickson entered into a written agreement in
which the Bank extended a $120,000 line of credit to Erickson, and Erickson, in a
written Pledge Agreement, assigned to the Bank a security interest in 50,000 shares
of Stage Stores, Inc. stock. The credit line agreement required that Erickson “[a]t all
times . . . maintain, or cause to be maintained, marketable securities as collateral for
the Account as set forth in the Pledge Agreement.” The credit line agreement
provided several events of default, including:
If (a) you fail to make the Total Minimum Payment Due by the due date,
(b) you . . . [do] not meet any condition of any agreement executed in
conjunction with this Agreement, including but not limited to, the
Pledge Agreement, . . . (i) we believe in good faith that the chances of
you paying or meeting all of the conditions of this Agreement have been
impaired, . . . then you will be in default of this Agreement. If you are
in default we may do any or all of the following: (i) declare all amounts
owing on the Account to be immediately due and payable in one
payment without notice, . . . or (ix) bring legal action against you. . . . If
this Agreement becomes due, by default, demand or maturity, we may
at our option, demand, sue for, collect or make any compromise or
settlement we deem desirable with reference to any marketable securities
or any other collateral. We shall have no duty with respect to collection
or protection of such collateral, or any income of such collateral or as to
the preservation of any rights pertaining to such collateral.

          The Pledge Agreement provided, “This security interest is given to secure
payment of all indebtedness evidenced by a promissory note, line of credit agreement
or other financial accommodation in the amount of $120,000.00 . . . .” The Pledge
Agreement contained the following pertinent provisions: 
4. Limitations on Obligations of [the Bank]. [The Bank] will use
ordinary reasonable care in the physical preservation and custody of the
Collateral in [the Bank’s] possession, but will have no other obligation
to protect the Collateral or its value. . . . Except as provided above, [the
Bank] will have no responsibility or liability whatsoever for any
deterioration or decrease in the value of the Collateral.
 
5. Default. Pledgor may be in default under this Agreement if (a)
Pledgor does not make a payment when due . . . ; (b) this Agreement
ceases to be in full force and effect (including failure of any Collateral
document to create or continue a valid and perfected security interest or
lien) at any time and for any reason; . . . (g) failure of Pledgor to comply
with or to perform any term, obligation, covenant or condition contained
in this Agreement or any other Agreement or loan with [the Bank]; . . .
or, (i) if there is any event of default as defined in the Obligation. 
 
. . . .
 
7. Waivers. Pledgor waives presentment, demand, notice of demand
and notice of acceleration of maturity, protest and notice of nonpayment,
notice of dishonor, and any other notice whatsoever, except as may be
required by law. . . . 
 
. . . . 
 
10. A. Maintenance of Collateral. At all times during the term of this
Agreement, Pledgor agrees to maintain as security for the Obligation
Collateral with an Adjusted Collateral Value (as determined herein) in
excess of the unpaid principal balance of the Obligation. . . . 
 
. . . . 
 
C. Event of Default. Pledgor agrees that the failure to comply with
paragraph A above shall constitute an additional event of default under
Section 5 of this Agreement. Pledgor shall have fifteen (15) calendar
days from the date written notification of such noncompliance is mailed
to Pledgor . . . to either pledge additional Collateral . . . or to reduce the
unpaid principal balance of the Obligation . . . . If the Collateral is
declining in value or threatens to decline speedily in value, [the Bank]
shall have no obligation to notify Pledgor of the failure to comply with
paragraph A above nor to provide Pledgor with an opportunity to cure
such noncompliance, and in such case Pledgor agrees that [the Bank]
may immediately at [the Bank’s] sole option (i) declare amounts due
under the Obligation to be immediately due and payable, and/or (ii) sell
all or any part of the Collateral and apply the proceeds of such Collateral
to payment of amounts due under the Obligation. 
 
D. Sale or Substitution of Collateral. Subject to the provisions of
paragraph C above, if no default has occurred under this Agreement or
would result from such action, Pledgor may (i) sell the Collateral
provided that the net proceeds from the sale . . . are delivered to [the
Bank] to be applied at [the Bank’s] option to the amounts due under the
Obligation . . . . 

          Soon after entering into the agreement, Erickson borrowed the full $120,000
against the line of credit. Two weeks after signing the agreements and receiving the
line of credit, Erickson wrote to the Bank, stating, “I have been informed that you will
sell the stock if necessary. I am writing to ask you to please watch this stock’s value. 
In the event the stock’s value falls below my line of credit, I ask that you will sell the
stock.” At some time after Erickson wrote this letter, the stock became virtually
worthless.
          In March 2003, the Bank sued Erickson, alleging that he was in default and that
he owed the Bank $108,563.85 in principal and interest. Erickson denied the Bank’s
claim and filed a counterclaim for breach of contract, breach of fiduciary duty, breach
of warranty, negligence, and gross negligence, asserting that the Bank’s failure to sell
the Stage Stores shares, as directed by Erickson, resulted in a net loss to Erickson of
$113,500. 
          The Bank filed a motion for summary judgment in which it asserted that it had
established its entitlement to repayment of the loan as a matter of law and challenged
each of Erickson’s counterclaims as having no evidence to support them. The trial
court rendered judgment in favor of the Bank on all issues, including Erickson’s
counterclaims. 
DISCUSSION
          We review Erickson’s issues on appeal under the usual standard of review for
rule 166a(c) and (i). See Tex. R. Civ. P. 166a(c), (i); Randall’s Food Mkts., Inc. v.
Johnson, 891 S.W.2d 640, 644 (Tex. 1995) (stating standard of review under rule
166a(c)); Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994
S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (stating standard of
review under rule 166a(i)). 
Liability on the Line of Credit
          In his first issue, Erickson contends that the trial court erred in granting the
motion for summary judgment for recovery of “the outstanding balance alleged to be
due on the promissory note” because there were issues of material fact regarding the
right of recovery on “the note, and the conditions precedent to the recovery on the
note.” Erickson argues that, in his deposition, he raised issues of fact regarding the
existence of a default and whether the Bank provided notice of default and notice of
intent to accelerate the note. Erickson further argues that the Bank’s failure to
provide such notice did not comply with the requirements of Shumway v. Horizon
Credit Corp., 801 S.W.2d 890, 892-93 (Tex. 1991). 
          The issue in Shumway was whether the makers of a promissory note waived
notice of intent to accelerate the note. Id. at 891. The Shumways signed a
promissory note that was payable in monthly installments over a period of 15 years. 
Id. Upon their default, the holder accelerated the payments due on the note and sued
the Shumways for the entire unpaid balance plus interest. Id. The supreme court
concluded that, although the Shumways clearly waived presentment and notice of
acceleration, they did not waive notice of intent to accelerate. Id. at 895. 
          Erickson’s reliance on Shumway is misplaced. Erickson’s credit line agreement
is not a promissory note payable in installments. The agreement has no time for
payment and is therefore payable on demand. See Tex. Bus. & Com. Code Ann.
§ 3.108 (Vernon 2002) (note stating no time for payment is payable on demand); see
also Donald v. Bennett, 415 S.W.2d 450, 453 (Tex. Civ. App.—Forth Worth 1967,
writ ref’d n.r.e.) (“Paper payable on demand is due and actionable immediately
without demand . . . . A bill or order that expresses no time for payment becomes, on
acceptance, due on demand. . . .”) (quoting 9 Tex. Jur. 2d Bills and Notes §§ 62, 63
(1959)


); Stavert Props., Inc. v. RepublicBank, 696 S.W.2d 278, 281 (Tex. App.—San
Antonio 1985, writ ref’d n.r.e) (stating that demand note is due from moment of
execution and is actionable immediately without demand). 
          In addition to the Bank’s rights under section 3.108, the agreements provided
for the Bank’s rights to collect on the loan. Under the agreements, the Bank had the
right to sue Erickson for all amounts owed in the event of Erickson’s default.


 
Erickson’s failure to maintain collateral sufficient to secure his loan was an event of
default of the Pledge Agreement, and a default of the Pledge Agreement was an event
of default of the credit line agreement. These agreements provided that, upon default,
the Bank could declare the loan due and payable without notice and bring legal action
to collect the debt. It is therefore immaterial whether the Bank provided Erickson
with notice of default and notice of intent to accelerate the note. 
          We overrule Erickson’s first issue. 
 

Erickson’s Counterclaims
          In his second issue, Erickson contends that the trial court erred in granting the
Bank’s motion for summary judgment on Erickson’s counterclaims because there
were material issues of fact regarding whether the Bank breached its contract with
Erickson by not selling the collateral and applying the proceeds to the balance of
Erickson’s loan. Erickson argues that, at a time when the collateral was sufficient to
satisfy the loan, he directed the Bank to sell the shares of Stages Stores stock and to
apply the proceeds to the balance of the loan. Erickson further argues that, because
the Bank did not honor his directive, the stock lost value and was not sufficient to
secure the loan, and the Bank breached its contract with Erickson. 
          Erickson’s contention that the Bank “acknowledged that it would act to sell the
collateral and apply the proceeds to the balance of the loan” is without merit. Both
the agreements were integrated, providing that they represented “the final agreement
between Borrower(s) and [the Bank], and may not be contradicted by evidence of
prior, contemporaneous or subsequent oral agreements between such parties. There
are no unwritten oral agreements between [Erickson] and [the Bank].” Thus, the
terms of these written, integrated agreements could not be contradicted by Erickson’s
deposition testimony. See Conte v. Greater Houston Bank, 641 S.W.2d 411, 419
(Tex. App.—Houston [14th Dist.] 1982, writ ref’d n.r.e.) (stating that express
provisions of note cannot be contradicted by parol evidence). 
          Contrary to Erickson’s assertion, the Pledge Agreement did not give Erickson
the right to direct the Bank to sell the collateral. The Pledge Agreement, in paragraph
10.D, gave Erickson the right, subject to any events of default, to sell the collateral
and to apply the proceeds to the balance of the loan. There is no evidence that
Erickson told the Bank that he wanted to sell the collateral, nor is there evidence that
he “directed” the Bank to do so. Erickson’s letter asked the Bank to “watch this
stock’s value” and to “sell this stock” if it fell below his line of credit. Moreover,
there is no evidence that the Bank actually received Erickson’s letter.


 
          The agreement between Erickson and the Bank specifically limited the Bank’s
obligation in connection with the collateral to the physical preservation and custody
of the collateral and relieved the Bank of any responsibility for the decrease in value
of the collateral. Although the agreement gave the Bank the right to sell the collateral
under certain conditions, it did not impose any duty to sell the collateral. Therefore,
the Bank did not breach its contract with Erickson by not selling the stock. 
          We overrule Erickson’s second issue.
 

CONCLUSION
          We affirm the judgment.
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Alcala.