Joseph P. CONTE, Appellant,

v.

GREATER HOUSTON BANK, Appellee.

No. C2993.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 19, 1982.

Charles A. Botschen, Groom, Miglicco, Gibson, Bussell & Stewart, Houston, for appellant.

Don M. Kennedy, Gregg K. Saxe, Ladin & Engel, Houston, for appellee.

Before MILLER, MORSE and JAMES, JJ.

## OPINION

MORSE, Justice.

Appellant Joseph P. Conte appeals from a summary judgment for appellee Greater Houston Bank declaring that it may, at its sole discretion, accelerate payment upon demand of the entire balance and accrued interest due and owing on a $1,700,000 real estate lien note bearing interest on unpaid principal at nine and one-half percent per annum, decreeing that appellant take nothing on his cross-actions and pay costs, and denying all other relief. We overrule all eleven points of error asserted by appellant and affirm the judgment of the trial court.

Appellee filed suit seeking a declaration of its rights under the following provision in the real estate lien note:

"ON DEMAND, BUT IF NO DEMAND IS MADE: principal and interest shall be due and payable in monthly installments of Fourteen Thousand Five Hundred Thirty Five and No/100 Dollars ($14,535.00) (or more) each, payable on the 4th day of each and every calendar month, beginning on the 4th day of May, 1978, and continuing regularly thereafter until the expiration of fifteen (15) years from the date hereof, when the entire amount hereof, principal and interest thereon remaining unpaid, shall then be due and payable; interest being calculated on the unpaid principal to the date of each installment paid and the payment made credited first to the discharge of the interest accrued and the balance to the reduction of the principal."

Appellant, the maker of the note dated April 3, 1978, answered with a general denial and affirmative pleas of usury, waiver and estoppel, and failure of consideration. He added a cross-action asserting four causes of action, alleging that the purpose of the note was for permanent long term financing as an extension and renewal of prior notes and that $17,000 was required to be paid to appellee bank as a one percent "brokerage" fee. Further, appellant asserted that he maintained certificates of deposit in the amount of $1,800,000 with appellee bank for the first sixteen months after the note was executed. Appellant prayed as defendant that the court declare that plaintiff-appellee bank "has no right to make a demand upon defendant for the principal balance due and owing together with interest thereon." Appellant's answer asserted usury as an affirmative defense and his first two cross-actions were "based on usury." The first of these asserted that the "brokerage point" of $17,000 was in fact interest contracted for, charged and received which made the demand note usurious in excess of double the amount of interest allowed by law contrary to Tex.Rev.Civ. Stat.Ann. art. 5069 § 1.06(2) (Vernon 1971), so as to cause forfeiture of all principal. The second cause of action based on usury asserted that the bank's requirement of maintenance of his certificates of deposit, as a compensating balance, reduced the true principal to zero and made the interest contracted for, charged and received usurious in excess of double the amount allowed by law so as to cause a forfeiture. Appellant's third and fourth cross-actions asserted a breach of contract and negligence in failing to carry out an alleged agreement for permanent financing in consideration of the $17,000 deduction from the funds advanced by the bank. Appellant sought damages of double the amount of interest plus attorney's fees, consequential damages, expenses and punitive damages. The trial court entered summary judgment for the bank and against all defenses and cross-actions.

## DECLARATORY JUDGMENT JURISDICTION

■ Appellant's first two points claim error in rendition of the declaratory judgment, for a lack of jurisdiction because of absence of a justiciable controversy and inability to fully resolve the controversy. The principal cases cited on by appellant as requiring our holding that the court had no power to grant advisory opinions or to determine matters not essential to the decision of an actual controversy are distinguishable as instances of attempted modification of earlier final judgments on the basis of hypothetical future facts. See *Reuter v. Cordes-Hendreks Coiffures, Inc.,* 422 S.W.2d 193 (Tex.Civ.App.—Houston [14th District] 1967, no writ) and *California Products Inc. v. Puretex Lemon Juice, Inc.,* 160 Tex. 586, 334 S.W.2d 780 (1960).

Appellant cites other cases which involve efforts to pre-judge possible future litigation, usually between unknown parties. In *Byrd v. Fard,* 539 S.W.2d 213 (Tex.Civ.App. —Dallas 1976, no writ) where the controversy between the parties before the court was already resolved, the court refused to pass on whether the Texas Deceptive Trade Practices Consumer Protection Act violated due process and was unenforceable as to other possible litigants. Similarly, in *State of Texas v. Margolis,* 439 S.W.2d 695 (Tex. Civ.App.—Austin 1969, writ ref'd n.r.e.) it was held improper, in the absence of a *bona fide* threat of prosecution, to declare that the Texas anti-trust laws would not be violated by a proposed scheme to avoid the laws requiring stores to close on Saturday or Sunday. *Southern Traffic Bureau v. Thompson,* 232 S.W.2d 742 (Tex.Civ.App.— San Antonio 1950, writ ref'd n.r.e.) merely held it improper to enter a declaratory judgment on facts which were particularly subject to mutation and change, where there were adequate criminal laws and procedures to provide relief against illegal practice of law. The court would not advise with regard to the admissibility in future cases of evidence which might be offered. In such cases, as in *Firemen's Insurance Co. v. Burch,* 442 S.W.2d 331 (Tex. 1969) and *Liberty Mutual Insurance Co. v.*

*American Employers Insurance Co.,* 545 S.W.2d 216 (Tex.Civ.App.—Fort Worth), *reversed on other grounds,* 556 S.W.2d 242 (Tex.1977), where it was held that it was not proper for declaratory judgment to determine future liability on tort judgments which might be established, further litigation would necessarily be required despite the entry of declaratory judgment.

Accordingly, Texas courts dismissed for want of jurisdiction a case filed after the United States Court of Appeals, Fifth Circuit, stayed decision on a diversity case to allow a declaratory judgment by a Texas court on the construction of a life insurance clause, saying the federal court's reservation of jurisdiction made the requested declaratory judgment only advisory. *United Services Life Insurance Co. v. Delaney,* 386 S.W.2d 648 (Tex.Civ.App.—San Antonio), aff'd, 396 S.W.2d 855 (Tex.1965). The case before us on appeal does not involve such an "advisory opinion" on liabilities that could only be established in future litigation which is merely possible or between nonparties. Once the demandability of the note was adjudicated, the bank could resort to extra judicial foreclosure without the need to sue for any non-payment.

In appellant's cited cases of *Joseph v. City of Ranger,* 188 S.W.2d 1013 (Tex.Civ. App.—Eastland 1945, writ ref'd w.o.m.), and *Harding Bros. Oil & Gas Co. v. Jim Ned ISD,* 457 S.W.2d 102 (Tex.Civ.App.—Eastland 1970, no writ), declaratory judgments sought in tax cases which would not fully determine the tax liability were held properly refused. The *Joseph* case involved an interlocutory appeal, there being no final appealable adjudication; in the *Harding* case declaratory judgment was held properly denied on the merits by the trial court. In *McKinnon v. Lane,* 285 S.W.2d 269 (Tex. Civ.App.—Fort Worth 1955, writ ref'd n.r. e.), it was held proper for the trial court to refuse to rule on a declaratory judgment request "without prejudice to future rights to seek relief should the occasion arise." No actual controversy exists where a dispute is theoretical and a mere advisory opinion would result. In the instant case,

however, the declaratory judgment sought would determine the rights of the parties between themselves as to the propriety of a demand to mature the debt, the resulting obligation to make payment and the propriety of a foreclosure in the event of non-payment. Although appellant had not refused a demand made by appellee, at least after the assertion of the affirmative defenses and cross-actions related to the note on which both parties sought interpretation by declaratory judgment, the trial court was presented with a present justiciable controversy as to whether the obligation could be legally matured by the bank. Appellant's first two points of error are overruled.

### SUMMARY JUDGMENT—DEFENSES REQUIRING PAROL EVIDENCE

■ Appellant contends by his third point of error that a summary declaratory judgment as to the bank's right to make demand should have been prevented by issues of fact with regard to appellant's affirmative defenses of usury, waiver and estoppel, and failure of consideration. Under the written transactions presented in the record, particularly in light of the parol evidence rule, there was no admissible evidence to raise the defenses of waiver, estoppel or failure of consideration. No assertion of fraud in the inducement was raised. In *Town North National Bank v. Broaddus,* 569 S.W.2d 489 (Tex.1978), where summary judgment against the makers of a promissory note was affirmed, the Court said at page 491:

> ... a negotiable instrument which is clear and express in its terms cannot be varied by parol agreements...

The Court continued at page 492, stating:
> An unconditioned written instrument cannot be varied or contradicted by parol agreements or by representations of the payee that the maker would not be held liable according to the tenor of the instrument.
>
> \*　\*　\*　\*　\*　\*
>
> The promise here complained of as being intended *not* to be performed was a collateral one in parol at variance with the

written contract entered into, and one proof of which the law does not admit. If fraud could be predicated upon such promise and intention, then any collateral parol agreement might be asserted to contradict, vary, or even abrogate any written contract, under the guise of a fraudulent intent not to perform such collateral parol agreement. The practical effect would be to destroy the parol evidence rule altogether. *Mitcham v. London,* 110 S.W.2d [140] at 142 [Tex.Civ. App.1937].

Or, in the words of another court, a promissory note would be reduced to a 'meaningless scrap of paper.' *Howeth v. Davenport,* 311 S.W.2d 480, 482 (Tex.Civ. App.—San Antonio 1958, writ ref'd n.r. e.).

Thereafter, the Court concluded at page 494:

> To be entitled to a summary judgment, the movant has the burden of establishing that there exists no material fact issue and that he's entitled to judgment as a matter of law. [cites omitted] By way of pleadings and proper summary judgment proof ... Bank demonstrated as a matter of law that it was entitled to summary judgment. In opposition to this, [defendants] asserted the affirmative defense of fraud in the inducement. In order to avoid a summary judgment in favor of the plaintiff—Bank, it was their burden as defendants to show the existence of an issue of fact with respect to their affirmative defense. [cites omitted] To meet this requirement, [defendants] offered an affidavit in which it was averred that an officer of the bank represented to them that they would not be held liable on the note, that only another person would be looked to for payment of the note. Rule 166—A(e) of the Texas Rules of Civil Procedure (Supp.1978) requires that supporting and opposing affidavits, among other things 'shall set forth such facts as would be admissible in evidence.' This rule has been interpreted to mean that the affidavit must set forth such facts as would be admissible in evi-

dence of a trial. [cites omitted] Because of our previous holding that the facts in their affidavit upon which they rely to establish fraud in the inducement are barred by the parol evidence rule, [defendants] are, in effect, in the position of having offered no summary judgment proof to meet the burden imposed upon them to show the existence of a genuine issue as to a material fact. Consequently the trial court properly granted summary judgment in favor of . . . Bank.

Applying such rules to our case, the contention that by having accepted installment payments without having made a demand before they became due, the appellee bank did not have and retain the right to make a demand would have been contradictory of the express written agreement between the parties as construed by the trial court. Likewise, any assertion of failure of consideration under an obligation for "permanent financing," contrary to the express provisions of the written note and related arrangements, would violate these contractual provisions protected by the parol evidence rule. As in *Town North National Bank v. Broaddus, supra*, the trial court properly granted summary judgment in favor of the bank, at least as to the affirmative defenses of waiver, estoppel and failure of consideration.

### USURY—as a defense

█ Contracting for, charging or collecting interest at a usurious rate in violation of Article 5069 § 1.06(1) would not be more than a partial defense, and would not prevent the declaratory judgment sought by appellee bank. Usury would be no defense unless it was construed that contracting for the payments called for by the note (especially when construed as still containing a right to make a demand) automatically constitutes contracting for usurious interest because of the possibility that the appellee bank could collect more than twice the permissible interest at the rate of 10%, so as to cause a forfeiture by the appellee bank of all rights to collect the principal pursuant to the provisions of Article 5069 § 1.06(2). Any other contention of the commission of

usury, even if criminal, would constitute no defense to the plaintiff bank's cause of action to obtain a declaration of its right to make a demand.

The $17,000 deducted from the funds advanced by appellee bank to appellant on April 3, 1978, where the note was executed, could not be classified or justified as a "brokerage fee," in that there was no third party involved in the transaction, and the money was retained by appellee bank rather than paid out to another who performed some function in the transactions. Any sum charged by the bank in addition to the interest specified and the principal required to be repaid would have to be deemed a part of the consideration for the use of the money loaned by the bank, or in other words, interest.

Just the deduction of $17,000 as 1% from the face amount of the loan under the note, even if treated as pre-paid interest over and above the 9½% per annum interest called for, did not necessarily constitute usury simply because the total exceeds 10%.

### USURY—"spreading"

Under the rule of *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937), as recently applied in *Tanner Development Company v. Ferguson,* 561 S.W.2d 777 (Tex.1977), the $17,000, as pre-paid interest, can be "spread over the entire term" of the notes in determining whether the interest charged was a sum greater than such principal debt would produce at 10% per annum during the time for which the borrower had use of the money. *First State Bank of Bedford v. Miller,* 563 S.W.2d 572 (Tex.1978). Since September 1, 1975, Article 5069 § 1.07(a) adopted the "spreading doctrine" of *Nevels v. Harris, supra,* with regard to loans secured by real estate. That doctrine in turn was based on the law merchant as recognized in the earlier holding in *Bothwell v. Farmers' and Merchants' State Bank & Trust Co. of Rusk,* 120 Tex. 1, 30 S.W.2d 289 (1930) that:

> In Texas the rule sanctioning the reservation of interest in advance at the highest conventional rate for a year or less is too firmly established to be departed from.

In *Nevels v. Harris, supra,* the lender took a note for $6,400, but deducted $320 and only loaned $6080—which sum the Court treated as the "real amount of the loan." The Court treated the $320 as interest, which it added to the 8% per annum interest called for over the 3 year term of the note, in finding the total was less than 10% on the true amount loaned. In *O'Connor v. Lamb,* 593 S.W.2d 385 (Tex.Civ.App. —Dallas 1979, no writ), a $500 discount on a loan where no third party provided any service for which a fee could be charged, was held to amount to interest greater than 10% on a $2,500 ninety day note. The plaintiff there was awarded twice the amount of such deducted interest under the usury statute, plus discharge of the note and attorney's fees, because contracting for the payment of the $2,500 within 90 days after a loan of only $2,000 resulted in interest more than twice the permissible amount. The doctrine of "spreading" the interest, prepaid by deduction, would still not make the transaction legal, and there was no savings clause which reduced the total amount payable to a legally permissible sum.

If the "true principal," as determined in the case before us by the method employed in *First State Bank of Bedford v. Miller, supra,* is $1,683,000 instead of $1,700,000, then we must determine whether the scheduled installment payments resulted in contracting for usury. The permissible interest of 10% payable monthly on the net loan of $1,683,000, as diminished by the monthly payments of $14,535, to the extent such payments exceeded ⅚% of that month's balance, permits the $17,000 excess of the face amount of the note over the actual loan to be absorbed by the amount such permissible interest exceeds the 9½% "interest calculated on the unpaid principal to the date of each installment paid", with "the payment made credited first to the discharge of the interest accrued and the balance to the reduction of the principal" as called for by the note. Over the 15 years it is obvious that the total permissible interest (i.e. $2,404,-920.10 calculation) would exceed (by $251,-213.00) the amount required to be paid, even including the $17,000 "pre-paid" plus the cumulative interest component of the 180 installments. The first month's interest at 9½% on the "unpaid principal" as called for by the note is $701.25 less than that which is permissible, and it would obviously take only a little more than two years to absorb the $17,000 within the permissible extra ½%. A pre-payment of interest which is amortized in less than the three years approved in *Nevels v. Harris, supra,* cannot make the transaction usurious.

Appellant contends, however, that Article 5069 § 1.07(a) merely adopted the "spreading doctrine" of *Nevels v. Harris,* which depended upon "savings clauses" to abate unearned interest, whereas the savings provisions of our note and deed of trust do not purport to relieve anything but the payment of interest "under this note"; he says the $17,000 deducted from the note at the time of execution was not payable thereunder. Apparently appellant would contend such sum merely reduced the principal which could legally bear interest and constituted a sum *already* charged, which apparently appellant contends exceeded 20% interest during the period of approximately the first eighteen days when a demand could have been made for the face amount of the note. Appellant cites *Shropshire v. Commerce Farm Credit Co.,* 120 Tex. 400, 30 S.W.2d 282 (1930), for the proposition that a person may not relieve himself from effects of usury by merely including a contractual disclaimer of the intent to do that which the contract has plainly done.

In *Nevels v. Harris, supra,* a provision in the note which called for reduction of interest and was not a mere denial of intent to violate the usury statutes, but a modification of the contractual obligations, was held effective to prevent the creation of any illegal obligation. In the note · before us there is a provision that "in no event shall any interest payable under this note, regardless of how said interest may be defined or computed, ever exceed the maximum rate permitted under the laws of the State of Texas." This provision effectively makes *Nevels v. Harris* and Article 5069 § 1.07(a) both applicable.

USURY—acceleration by demand or
on default

Nevertheless, appellant apparently contends that the deduction of $17,000 at the time of the execution of the promissory note, together with the claimed right to make demand—i.e., acceleration of maturity of the face amount of the obligation so as to give the appellee bank the contractual right to receive that sum from the appellant prior to the time when $17,000 would have amounted to less than 20% per annum interest on the net $1,683,000 principal—is contracting for usury contrary to Article 5069 § 1.06(2) which constitutes a defense by reason of the forfeiture provisions of that statute. In *Temple Trust Co. v. Haney,* 103 S.W.2d 1035, (Tex.Civ.App.—Austin) *aff'd,* 133 Tex. 414, 107 S.W.2d 368 (Tex.1937) it was held that the right to recover unearned interest by acceleration of maturity could constitute usury even though acceleration never occurred. In *Bothwell v. Farmers' Bank & Trust Co. of Rusk, Texas, supra,* it was held that the fact that a default was not within the lender's control did not prevent the transaction from being usurious if the resulting contractual interest was greater than 10% by reason of the acceleration. The Court reasoned that it was no defense that the borrower could have kept from incurring usurious interest by paying on time. However, in *Dunlap v. Voter,* 72 S.W.2d 1109 (Tex. Civ.App.—El Paso 1934, writ ref'd) where, on acceleration, makers could not be required to pay more than principal and interest at the rate specified in the note, there was held to be no contractual usury. Also in *Nevels v. Harris, supra,* it was held that because of a savings clause which required reduction of the 8% interest to that legally allowable, the possibility of optional acceleration of maturity for non-payment during the period before the $320 deducted "prepaid interest" could be absorbed by the 2% additional permissible interest on the $6080 "true principal" did not make the contract usurious, despite the holding in *Shropshire v. Commerce Farm Credit Co., supra,* which was a companion case (also involving an acceleration provision) decided at the same

time as *Bothwell v. Farmers State Bank & Trust Co. of Rusk, Texas, supra.* Under the holding in *Eubanks v. Simpson,* 90 S.W.2d 291 (Tex.Civ.App.—Amarillo 1936, writ ref'd), and the cases cited therein, the deduction from the face of the loan of a sum which results in payments of less than 10% if the note is allowed to run to maturity does not make the transaction usurious. The note there provided that if accelerated "the interest on the loan shall be 10%." Thus, in effect, there was a savings clause applied to prevent the contention that usurious interest was contracted for merely by the possibility of an acceleration which did not actually occur.

In *Miller v. First State Bank of Bedford,* 551 S.W.2d 89 (Tex.Civ.App.—Ft. Worth 1977), modified and affirmed in *First State Bank of Bedford v. Miller, supra,* if there had been a savings clause requiring spreading of otherwise usurious interest, usury would expressly not been held to have resulted. The holding in *Ferguson v. Tanner Development Co.,* 541 S.W.2d 483 (Tex.Civ. App.—Houston [1st Dist.] 1976), that savings clauses "cannot operate to change the plain terms of the note" and that therefore "the contract is found usurious under its terms" was reversed, *Tanner Development Co. v. Ferguson, supra.* The note before us not only includes an effective savings clause, but expressly provides that interest is "payable monthly *as it accrues, ...*" as "... calculated on the *unpaid principal*" and "*payment ... credited ...* first to ... interest accrued and the balance to the reduction of the principal." Anything required to be paid and not earned as lawful interest is credited to principal. Since the note contemplates and provides for the Bank's optional maturity upon default "on any part" of the principal and interest called for, as well as being payable "on demand", the amount required to be paid at any time could only be the balance then due after crediting all payments first to any interest accrued, as reduced (if necessary) to the legally permissible rate, then to the reduction of principal. In this case there was no attempt to make any demand at any

time so as to charge or collect interest at a usurious rate. Neither was there any contracting for usury by the demandability or provisions for acceleration of maturity upon default.

■ If a contract as a whole is susceptible of more than one reasonable construction, the Court will adopt the construction which comports with legality. *Smart v. Tower Land and Investment Co.,* 597 S.W.2d 333 (Tex.1980). In view of the savings and reduction of principal clauses quoted above, the appellee's right to make a demand prior to the expiration of the period of time when the face amount of the note plus 9½% per annum interest accrued on the unpaid principal thereof would amount to in excess of 20% per annum interest on $1,683.000, would not constitute a violation of Article 5069 § 1.06(2).

### USURY—"Compensating balances"

Under the facts shown without dispute, appellant was not required to maintain a compensating balance which made the percentage interest provided on his loan excessive. The appellant received the interest called for by the certificates of deposit, and therefore such certificates cannot be considered as abolishing the loan principal. Compare the case of *Bradley v. Houston State Bank,* 588 S.W.2d 618 (Tex.Civ.App.— Houston [14th Dist.] 1979, writ ref'd n.r.e.), where it was held that there was no reduction of principal by the amount of a compensating balance where not the borrower's funds. Appellant was not deprived of the use of the $1,800,000 deposited for the certificates and was allowed to and did cash them in without restraint.

### USURY—summary

Under the usury statutes there was, as a matter of law, no contracting for, charge or receipt of interest in excess of 10% to cause a forfeiture of twice the amount of interest under Article 5069 § 1.06(1) as an offset to the obligation under the note. Neither could there possibly be interest contracted for, charged or received in excess of double the amount of interest allowed so as to cause a forfeiture of principal under Article

5069 § 1.06(2). As a result of either the $17,000 deduction or of the certificate of deposits of appellant there could not be any complete defense to the principal and interest obligations so as to make the note uncollectible and the demandability moot.

Accordingly there were no fact issues as to affirmative defenses which prevented the entry of a final summary judgment as to the declaratory judgment action.

### CONSTRUCTION OF THE NOTE'S DEMAND PROVISION

■ When the note on which appellee bank sought judgment declaring its right to demand the principal balance due with accrued interest and the accompanying deed of trust are considered together in the light of the surrounding circumstances, no ambiguity appears as to the intended term of the debt. There is no need to speculate about or be concerned with the purposes of the respective parties to the transactions; the agreements reached can be readily ascertained from the documents executed. Appellant cites no Texas case holding that a note payable "on demand, but if no demand is made," at a stated time or times should be construed as not capable of being demandable as to the balance due at any time prior to payment in full. All of the cases cited by appellant from other jurisdictions allowed demand to be made as an optional alternative to the date or dates specified for payment in the absence of a demand. No case or logic requires disregarding the express right to make demand and thereby mature the obligation. The construction of the note was a question of law to be determined by the trial court. *City of Pinehurst v. Spooner Addition Water Company,* 432 S.W.2d 515 (Tex.1968); *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193 (Tex.1962). As in *C&Z Inc. v. Oklahoma Tax Commission,* 459 P.2d 601, 6 U.C.C. Rep.Serv. 1080 (Okl.1969), it was proper to construe the note "payable, at the convenience of the holder, either on demand or in installments...." Appellant's fourth and fifth points of error are overruled.

## FACT ISSUES RE CROSS–ACTIONS

As to the claim that fact issues prevented the summary judgment against appellant's cross-actions, it has already been determined that the $17,000 "brokerage fee" must be treated merely as a reduction of the principal of the loan. There is no usury when such amount is spread over the full term of the note in accordance with Article 5069 § 1.07(a) and the doctrine of *Nevels v. Harris, supra.* The note under consideration was unlike the one held usurious in *Smart v. Tower Land & Investment Company, supra,* where "neither the note nor the deed of trust, nor any of the other documents contains any kind of usury savings clause whatever" and there was "nothing in the note to indicate that [bank] would pursue any course of action other than to keep unearned interest." Under the reasoning in *Eubanks v. Simpson, supra,* the savings clause and provisions as to calculation of interest on unpaid principal and the application of payments to reduce principal prevent the demandability of the note from causing it to be construed as usurious as a result of such $17,000 deduction.

Since the undisputed evidence shows that appellant was not required to maintain his certificate of deposits as a compensating balance, but could and did remove them from the bank, their existence did not cause or result in usury.

As to asserted breaches of contract, the express provisions of the note with regard to when the obligation is payable or may be payable, cannot be contradicted by parol evidence in an attempt to show some breach of a commitment to provide "long term financing." The terms set out in the note were accepted by appellant without any contemporaneous written commitment modifying them. Appellant's affidavit as to the purpose of converting interim financing into permanent long term financing pursuant to an agreement allegedly reached does not permit his contradiction of the express and unambiguous terms of the written agreements which he executed with appellee bank. Any other agreements which had been made were superseded by the express terms put in writing on April 3, 1978. Similarly, any undertaking on the part of appellee bank to arrange financing was not preserved by a written agreement which might be construed together with the note and deed of trust which reduced the transactions as of April to written contractual arrangements which were accepted. Appellant's acceptance and participation in such arrangements would amount to an accord and satisfaction of any previous existing duty inconsistent with the written terms ultimately established.

With regard to any action based on negligence, appellant fails to allege or show any basis for appellee bank's obligation to disclose to appellant the meaning of the written instruments which appellant signed or to disclose anything with respect to the other alleged failures on the part of the appellee bank to make disclosures. claimed to constitute alleged negligence. Appellant's tenth point of error as to material fact issues on negligence is related only to appellee bank's alleged status as a broker; any contentions as to other claims of negligence were waived by not being supported or argued in any way. The parol evidence rule prevents appellant from showing any obligation which contradicts those expressly set out in the transaction documented. The trial court properly granted summary judgment as to appellant's cross-actions, because no genuine issue of fact was raised in support of such allegations and contentions. The undisputed evidence shows that appellee bank was not acting as a broker, but was a party to the transactions which culminated on April 3, 1978.

## CONCLUSION

In summary, the trial court properly entered a declaratory judgment construing the note in accordance with its terms after being presented with a justiciable controversy under the pleadings of the parties. The court was able to and did finally resolve that controversy, and it determined the asserted defenses and cross-actions on their merits. Under proper summary judgment procedures the appellant was required

to support any affirmative defenses and cross-actions with affidavits or other competent evidence, but did not raise any fact issues in support thereof. The note was not ambiguous and there was no occasion for parol evidence as to its meaning. The savings clause here was no mere disclaimer of illegal intent, but a disclaimer of any contractual commitment for interest in excess of the maximum rate permitted under the laws of the State of Texas. There was no usury contracted for, charged or received by reason of the deduction of the $17,000 from the face amount of the loan or by reason of the existence of the certificates of deposit on which appellant received interest and later withdrew the principal. The provisions of Article 5069 § 1.07(a) are applicable to this loan secured by real property so as to allow spreading of the $17,000 deduction if treated as pre-paid interest along with the interest component of the monthly installments which were scheduled to extend over a 15 year period. Appellant contends the $17,000 was not "interest payable *under this note*" or under the deed of trust which also contains the savings clause. If this contention were accepted, then the $17,000 would have to be considered merely as a reduction of the amount loaned, so that there would be no interest other than the 9½% on the "unpaid balance to date of each installment paid." Even if 9½% was applied to the unpaid balance of the face amount of the note (making a rate of only 9.596%—i.e. $100/99 \times 99\frac{1}{2}\%$) until the complete collection of such interest and the $1,683,000 loaned, at which time the $17,000 excess of the face amount would be collected, that sum would have been effectively "spread" so as to amount to a total of interest ($2,189,995.20 + $17,000.00 = $2,206,995.20 by calculation) of less than 10% even without the applicability of the savings clause. Interest charged as of May 4, 1981, including the $17,000, amounted to only 9.65%. There was no evidence of waiver, estoppel or failure of consideration resulting from the transactions involved, nor was there any breach of any properly established contractual obligation on the part of the appellee bank. Neither was there any showing of the negligent breach of any duty on the part of the bank, and as result, no fact issue was raised which prevented the final entry of summary judgment declaring the appellee bank's right to make demand. The trial court properly denied the defenses asserted when it included in the final judgment the statement that "all relief not expressly granted is denied," in addition to the adjudication that appellant take nothing by his cross-actions.

The judgment of the trial court is in all things affirmed.