Victor **RODARTE**, Appellant,

v.

**INVESTECO GROUP, L.L.C.; Morad Mekhail, Individually and as Trustee of Certain Real Property Described as the South One–Half (½) of Lot Two (2) and all of Lots Three (3), Four (4), Five (5), and Six (6), In Block Twenty–Four (24), In Mrs. A.C. Allen's Addition to the City of Houston, Harris County, Texas NSBB, and Vincent Rodriguez, Appellees.**

No. 14–08–00093–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 29, 2009.

Jeffrey J. Tompkins and James Martin Juranek, Jr., Houston, TX, for Appellants.

Morad Mekhail, Paul S. Hoefker, Houston, TX, for Appellees.

Panel consists of Justices FROST, BROWN, and BOYCE.

## MAJORITY OPINION

JEFFREY V. BROWN, Justice.

In this property-foreclosure case, Victor Rodarte appeals the trial court's summary-judgment orders in favor of Investeco Group, L.L.C., Morad Mekhail, and Vincent Rodriguez. Victor contends that the summary-judgment orders were improperly granted because (1) he had standing to prosecute the suit on his brother's behalf; (2) one summary-judgment order was based solely upon previously nonsuited claims; (3) the appellee-movants failed to meet the required burdens of proof; and (4) the trial court ignored Victor's properly pleaded and proven affirmative defenses. We affirm the trial court's judgment.

## I. Background

In 1990, Paul Sanchez (a.k.a. Polo Sanchez) sold a piece of real property in Harris County to Eva Mendez. Sanchez and Mendez executed a promissory note for $110,000, which was secured by a deed of trust granting Sanchez a lien on the property. Mendez conveyed the property in 1997 to Marleny Serna, who assumed the note. In 1999, Serna conveyed the property via a document entitled "Assumption Warranty Deed" to Domingo Gonzales and Gregorio Rodarte, Victor's brother, and they assumed the note and executed a new deed of trust. According to the pleadings, Gonzales and Gregorio assumed the note under an oral partnership agreement in which each agreed to pay one-half of the note's payments and other expenses. Gregorio eventually assumed the entire note, allegedly buying out Gonzales's interest.

According to the pleadings, in 2004 Gregorio had difficulty making the monthly payments and began searching for a buyer for the property. Around the same time, Sanchez appointed Vincent Rodriguez as substitute trustee on the new deed of trust. Gregorio allegedly located a buyer, Gomar Properties, Inc., but then learned indirectly that Rodriguez had taken action to foreclose upon the property. In April 2004, Gonzales allegedly approached Rodriguez—in his capacity as an agent to Sanchez—to prevent the foreclosure, and the parties reached an oral agreement (the "Sanchez Agreement") to that effect. The specific details of that agreement remain in dispute.

In October 2004, Sanchez sold the note to Investeco. Investeco then appointed Morad Mekhail as the substitute trustee of the deed of trust. Mekhail executed a notice of foreclosure sale on the property and sold the property to the highest bidder, Investeco.

About two years later, Gregorio executed special and general power-of-attorney documents appointing Victor as his agent, and giving Victor authority to prosecute any and all legal actions relating to the property on his brother's behalf.

Victor filed suit against Investeco and Mekhail alleging claims for damages including breach of contract, negligence, improper foreclosure, and breach of fiduciary duty. Under the heading "Parties," Victor is identified as "an individual who ... is the lawful agent of real-party-in-interest,

Gregorio Rodarte, with respect to all suits arising from the real property in question."

Victor filed his first amended petition against Investeco and Mekhail alleging claims for (among other things) breach of contract, breach of fiduciary duty (against Mekhail in his capacity as trustee only), and conversion; Victor effectively nonsuited the previously asserted improper-foreclosure claims by omitting them from his amended pleading. After Victor filed his amended pleading, Investeco and Mekhail filed counter-claims seeking a declaratory judgment with respect to proper notice of foreclosure and the existence of surplus funds following foreclosure.

Investeco and Mekhail moved for summary judgment on several claims, including their newly asserted counter-claims. The trial court granted summary judgment in favor of Investeco and Mekhail with regard to the appellees' declaratory-judgment counter-claims, but denied the remainder of the summary-judgment motion.

Victor filed a fourth amended petition in June 2007, in which he added Gregorio and Gonzales as plaintiffs, and Sanchez and Rodriguez as new defendants. In July, Investeco and Mekhail filed a fourth amended motion against Gonzales, Victor, and Gregorio seeking summary judgment on the remaining claims for breach of fiduciary duty, tortious interference and conspiracy. Sanchez and Rodriguez subsequently joined Investeco and Mekhail in their motion.[1] On August 17, the trial court granted the motion for summary judgment ordering that Victor and Gregorio take nothing. For unspecified reasons, the trial court crossed out Gonzales's name from the summary-judgment order. But two weeks later, Gonzales nonsuited his claims.

On October 9, a suggestion of death was filed with the trial court, noting that Sanchez had died on May 8, 2007. The suggestion further indicated that no administration of Sanchez's estate was pending.[2]

In December 2007, the trial court severed the unresolved claims by Victor and Gregorio against Sanchez for breach of contract, creating a final and appealable summary-judgment order. Victor now appeals from that order.

## II. Analysis

Victor appeals adverse summary-judgment orders on (1) his claims for tortious interference with contractual relations and conspiracy against Investeco, Mekhail (individually) and Rodriguez; (2) his claim for breach of fiduciary duty against Mekhail (as trustee); and (3) the declaratory-judgment claims asserted against Victor by Investeco and Mekhail regarding proper notice of foreclosure and the existence of proceeds from foreclosure. Victor contends that the summary-judgment orders were improperly granted because (1) he had standing to prosecute the suit on his brother's behalf; (2) the summary-judgment order granting declaratory relief was based solely upon previously nonsuited claims; (3) the appellee-movants failed to

---

1. While Sanchez joined the motion for summary judgment, that motion did not include the plaintiffs' claims for breach of contract against him, and those claims were never added to the motion.

2. On October 12, Victor and Gregorio filed a fifth amended pleading asserting the same claims as stated in their fourth amended petition. But this new pleading added Edward Sanchez, "the only heir, known at this time, of the Estate of Paul Sanchez decedent," as a defendant to the suit. The pleading states that it is "necessary" to add Edward and the Estate of Sanchez in response to the previously filed suggestion of death.

meet the required burdens of proof; and (4) the trial court ignored Victor's properly pleaded and proven affirmative defenses.

## A. Victor Rodarte's Standing

■ Before considering Victor's contention on appeal that the trial court erred in granting summary judgment on the merits of Victor's claims, we must consider whether the trial court erred in determining that Victor lacked standing to assert these claims in the first place. Victor contends that the trial court erred in granting summary judgment on the ground that he lacked standing to assert the claims of his brother Gregorio in his own name as a matter of law.

■ Standing is a constitutional prerequisite to maintaining suit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). The absence of standing may be raised by a motion for summary judgment. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Under Texas law, a party has standing to bring suit if (1) it has suffered a distinct injury, and (2) there exists a real controversy that will be determined by the judicial determination sought. *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex.2001). This second component of standing refers to presentation of a justiciable issue. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245–46 (Tex.1994). We review a party's standing de novo and construe the pleadings in favor of the plaintiff. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex.2004); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

The appellees cite *Elizondo v. Texas Natural Resource Conservation Commission* for the proposition that an agent cannot bring suit on behalf of a principal in the agent's own name under a power of attorney. 974 S.W.2d 928, 931 (Tex.App.-Austin 1998, no pet.). In that case, Mil-

dred Elizondo, "individually and on behalf of those she is authorized to represent," filed suit in a Travis County district court challenging the Texas Natural Resource Conservation Commission's final order regarding actions it was taking to divert water. *Id.* at 930. The trial court sustained the commission's plea to the jurisdiction on three bases, one being that Elizondo did not have standing to bring the action on behalf of the affected landowners. *Id.* After the trial court sustained the plea, Elizondo filed a "Plaintiff's [singular] Notice of Appeal." *Id.* at 930–31. The Austin court of appeals held that (1) Elizondo's appointment as attorney-in-fact by power-of-attorney documents did not authorize her to bring suit on behalf of the ten individuals in her own name in a representative capacity; and (2) even if she were authorized to bring suit in a representative capacity, she did not perfect appeal in that capacity. *Id.* at 931.

In reaching its decision, the court in *Elizondo* relied on *Tinsley v. Dowell*, 87 Tex. 23, 26 S.W. 946, 948 (1894), for the proposition that, in Texas, an agent cannot bring a suit in his own name for the benefit of the principal. *Id.* Our court recently distinguished *Tinsley v. Dowell* on that proposition in *AVCO Corporation v. Interstate Southwest, Ltd.*, 251 S.W.3d 632, 652–53 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). As we stated in *AVCO, Tinsley* involved an agent suing on his own behalf, not for the benefit of the principal. *Id.* Here, as in *AVCO*, Victor specifically stated in his pleadings that he asserted claims on his brother's behalf, and appellees do not dispute that Gregorio has a justiciable interest in these claims. *See id.* at 653.

■■ In addition, the scope of Victor's authority under the special and general powers of attorney is a question of capacity, not standing. *Id.* at 649, 653. Stand-

ing is not to be confused with capacity. *Id.* at 649. Capacity concerns " 'a party's personal right to come into court,' " while standing concerns " 'the question of whether a party has an enforceable right or interest'." *Id.* (quoting *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 849 (Tex.2005)). A plaintiff with no legally cognizable interest in the outcome of the case lacks standing to sue on its own behalf, but may be authorized to sue on behalf of another. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996). Appellees have not challenged Victor's capacity to bring suit on his brother's behalf.

We conclude that Victor has standing as Gregorio's attorney-in-fact to litigate his brother's claims. The trial court could not have properly granted summary judgment on this basis.

■■ Appellees also contend that Victor perfected appeal in his individual capacity only and does not have standing in this court because he has no interest in the subject property.[3] While it is true that Victor did not state in the notice of appeal that he was representing his brother, he has sued below only in a representative capacity; there is no confusion as to his capacity before this court. Having made a bona fide attempt to invoke the appellate court's jurisdiction after prosecuting this suit solely in a representative capacity on his brother's behalf, Victor effectively has perfected an appeal. *See Warwick Towers Council of Co–Owners ex rel. St. Paul Fire & Marine Ins. v. Park Warwick, L.P.,* 244 S.W.3d 838, 839 (Tex.2008) (per curiam). We address that appeal on the merits.

**B. Trial Court's Summary–Judgment Orders**

In his first and second issues on appeal, Victor contends that the trial court improperly granted the appellees' second amended motion for summary judgment and fourth amended motion for summary judgment on Victor's remaining claims. Specifically, Victor argues that the trial court's granting of this summary judgment was in error because (1) the summary judgment related to Victor's notice-based and surplus-based claims was improper for procedural reasons and should have been denied; (2) the appellees failed to meet their evidentiary burden with respect to their statute-of-limitations defense; (3) appellee Rodriguez failed to meet his evidentiary burden with respect to his defenses to breach of oral agreement; (4) the appellees failed to meet their evidentiary burden with respect to Victor's conspiracy claim; and (5) the appellees failed to meet their evidentiary burden with respect to Victor's tortious-interference claim. We consider each of these issues in turn.

**1. Standard of Review**

■ We review the trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156–57 (Tex.2004). In a traditional summary judgment, the movant bears the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Aguirre v. Vasquez,* 225 S.W.3d 744, 750 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Thus, when a defendant moves for traditional summary judgment, it must conclusively negate at least one essential

---

**3.** It bears noting that the appellees filed their counter-claims seeking declaratory judgment against Victor in an individual—not representative—capacity. But unlike standing, objec- tions concerning capacity may be waived. *Nootsie, Ltd.,* 925 S.W.2d at 662. Since Victor never objected to the counter-claims on this basis, this issue is waived for appeal.

element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Shirvanian v. DeFrates*, 161 S.W.3d 102, 106 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe*, 145 S.W.3d at 157; *Aguirre*, 225 S.W.3d at 750. We review a summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Wal–Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex.2006) (per curiam) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 & 23 (Tex.2005)).

When, as here, the trial court does not specify in its order the grounds on which it relied in granting summary judgment, we must affirm the summary judgment if any of the grounds presented is meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005); *Chappell Hill Bank v. Smith*, 257 S.W.3d 320, 324 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Thus, to prevail on appeal, Victor must show that each of the appellees' summary-judgment grounds is meritless. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

### 2. Notice of Foreclosure and Surplus Funds

Victor's first issue on appeal contends the trial court erred in granting the appellees' second amended motion for summary judgment related to the notice of foreclosure and the existence of surplus funds resulting from the foreclosure. Specifically, Victor contends that the trial court's order was improper because these claims had been nonsuited by omission in his first amended petition. As a result, Victor argues, there were no "live" claims related to notice of foreclosure or surplus funds, rendering any judgment by the court purely advisory. Further, Victor asserts that his act of nonsuiting the claims disposed of any justiciable controversy between the parties on these issues, precluding the appellees' request for declaratory judgment.

Victor is correct that his act of omitting these claims from his first amended petition effectively nonsuited the claims. *J.M. Huber Corp. v. Santa Fe Energy Res., Inc.*, 871 S.W.2d 842, 844 (Tex.App.-Houston [14th Dist.] 1994, writ denied). But after Victor's nonsuit, the appellees filed counter-claims requesting declaratory judgment on both issues. If these claims were ripe for declaratory judgment, then the trial court properly could award declaratory judgment on them through its summary-judgment order.

The Texas Declaratory Judgment Act is a remedial statute the purpose of which is to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.002(b) (Vernon 2008); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995); *WesternGeco, L.L.C. v. Input/Output, Inc.*, 246 S.W.3d 776, 781 (Tex.App.-Houston [14th Dist.] 2008, no pet.). We must construe and administer this statute liberally. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.002(b); *Bonham State Bank*, 907 S.W.2d at 467. A court of record, acting within its jurisdiction, has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. *WesternGeco, L.L.C.*, 246 S.W.3d at 781. A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank*, 907 S.W.2d at 467; *West-*

*ernGeco, L.L.C.*, 246 S.W.3d at 781. For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Bonham State Bank*, 907 S.W.2d at 467; *WesternGeco, L.L.C.*, 246 S.W.3d at 781.

Victor contends that he effectively destroyed any real, justiciable controversy by nonsuiting these claims, leaving only a theoretical dispute on the issue. But the appellees argue that because the claims were dropped voluntarily, they could be reasserted in the future. In *Conte v. Greater Houston Bank*, this court held that a justiciable controversy existed sufficient to support summary judgment when a bank filed suit seeking a declaration of its rights under a similar lien note. 641 S.W.2d 411 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). In that case, this court held that, even though the maker had not yet refused a demand by the bank, the determination of the parties' rights under the note qualified as a "present justiciable controversy." *Id.* at 413–14. Likewise, the appellees in this case sought clarification through their counter-claim of their rights and liabilities based on their conduct of providing notice of foreclosure.

Similarly, other courts have recognized that a determination of rights to sales proceeds are a justiciable controversy sufficient to sustain declaratory relief. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olson*, 920 S.W.2d 458 (Tex. App.-Austin 1996, no pet); *Blackmon v. Parker*, 544 S.W.2d 810 (Tex.Civ.App.-El Paso 1976), *aff'd*, 553 S.W.2d 623 (Tex. 1977).[4] In this case, the appellees' counterclaims regarding the notice of foreclo-

sure and the existence of surplus proceeds were justiciable controversies sufficient to qualify for declaratory judgment.

### a. Notice of Foreclosure

■ In their counter-claim, the appellees contend that proper notice of the foreclosure was given in accordance with the deed of trust and the Texas Property Code. The deed of trust required only that the trustee give notice to Gonzales and Gregorio as required by law. The Texas Property Code requires only notice "by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." Tex. Prop.Code Ann. § 51.002(b)(3) (Vernon 2007 & Supp. 2008).

Attached to their motion, the appellees provided evidence of Gregorio's address as provided to the trustee, copies of the letter of notice and the notice itself, a receipt for having mailed the notice to Gregorio by certified mail, and a copy of the return card. Victor offered no evidence or rebuttal to the appellees' evidence other than to reurge that no justiciable controversy existed. Based on the appellees' motion and the accompanying evidence, we conclude that the appellees proved that proper notice of the foreclosure was given as a matter of law. The trial court did not err in granting summary judgment on this issue.

### b. Surplus Proceeds

■ After a valid foreclosure sale, Investeco would be entitled to judgment for the amount of the note, interest, and attorney's fees, less the amount received at the trustee sale and other legitimate credits. *Resolution Trust Corp. v. Westridge Court*

---

4. This court held that a declaratory-judgment action regarding escrow funds from a foreclosure sale does not qualify as a justiciable controversy in *National County Mut. Fire Ins. Co. v. Hood*, 693 S.W.2d 638 (Tex.App.-Hous-ton [14th Dist.] 1985, no pet.). But our decision in that case was based on the appellee's failure to include in the record summary-judgment evidence to support the trial court's required finding. *Id.* at 639.

*Joint Venture,* 815 S.W.2d 327, 330 (Tex. App.-Houston [1st Dist.] 1991, writ denied). In the present case, the relevant deed of trust establishes the following priority for the distribution of foreclosure proceeds: (1) expenses of foreclosure, including a 5% commission to the trustee; (2) payment to the beneficiary under the deed—here, Investeco by assignment—of the full amount of principal, interest, attorney's fees, and other charges due and unpaid; (3) payment of any amounts required to be paid by law before payment to grantor; and (4) payment of any remaining balance to the grantor—Gregorio.

The appellees' summary-judgment proof shows that Investeco's bid at the foreclosure sale was $123,757.00. The appellees' attached proof further shows that the outstanding debt on the note, expenses of the sale, as well as taxes on the property—paid by Investeco before the sale—total $123,757.00. Victor did not rebut this summary-judgment proof. Based on this record, there appears to be no issue of fact concerning the existence of surplus proceeds after the foreclosure sale. The trial court did not err in granting summary judgment on this issue.

Victor's first issue on appeal is overruled.

### 3. Plaintiffs' Remaining Claims

In his second issue on appeal, Victor challenges the trial court's order granting the appellees' fourth amended motion for summary judgment on the plaintiffs' remaining claims. At the time the motion was filed these claims included breach of

oral agreement by Sanchez;[5] tortious interference with contractual relations by Investeco, Mekhail (as an individual) and Rodriguez; breach of fiduciary duty by Mekhail (as trustee); and conspiracy by Sanchez, Investeco, Mekhail and Rodriguez. Appellees' motion sought summary judgment on all of these claims except for the breach of contract claim against Sanchez. Victor generally contends that the trial court erred in granting this summary judgment because the appellees failed to meet the evidentiary burdens associated with their asserted defenses.

The appellees sought summary judgment on each of the plaintiffs' causes of action based on Victor's asserted lack of standing to sue on his brother's behalf. As discussed above, Victor did not lack standing. Therefore, Victor's asserted lack of standing was not a valid basis for summary judgment in favor of the appellees on Victor's claims for tortious interference with contractual relations, breach of fiduciary duty, and conspiracy.

The appellees also sought summary judgment on all of the claims by Gregorio and Gonzales based on the statute of limitations. Gonzales has since nonsuited his claims against the appellees, and thereafter ceased to be a party to this case. Further, because Gregorio's claims in this case mirror exactly those asserted by Victor on his behalf, those claims relate back to the originally filed claims and are not barred by limitations. *See* Tex. Civ. Prac. & Rem Code Ann. § 16.068 (Vernon 2008); *Johnston v. Crook,* 93 S.W.3d 263, 269 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (when second claimant's cause

---

**5.** In their fourth amended petition, the plaintiffs alleged breach of contract by Sanchez based on his alleged breach of the Sanchez Agreement. But perhaps because this claim did not involve Investeco and Mekhail, it was not included in their fourth amended motion for summary judgment on the plaintiffs' remaining claims. In its "Final Summary Judgment," the trial court ordered that the plaintiffs "shall take nothing on their claims against ... Paul Sanchez ...," apparently granting Sanchez more relief than he requested.

of action was identical to, and substituted for, original claimant's, date of original claimant's filing controlled for purposes of limitations).

We will consider the other claims and related defenses in turn.

### a. Breach of Oral Agreement

In his fourth amended petition, Victor brought a single claim against Sanchez for allegedly breaching the oral Sanchez Agreement. Victor's appellate brief states that summary judgment on this claim was in error because the appellees did not meet their evidentiary burden. Apparently Victor has included these contract-based arguments as they relate equally to both the breach-of-oral-agreement claim and the tortious-interference claim. But Sanchez is not a party to this appeal because the claims related to him were severed by the trial court's order of December 14, 2007. Therefore, we will not consider this issue as it involves a party who is not a part of this appeal and a claim which was not addressed in the motion for summary judgment.

### b. Tortious Interference

■ In the court below, and again on appeal, Victor claims that Investeco, Mekhail (individually), and Rodriguez tortiously interfered with the Sanchez Agreement by orchestrating both the assignment of the note and the foreclosure sale before Gregorio could close the sale with Gomar. A party alleging tortious interference must prove that a contract subject to interference exists; that the alleged act of interference was willful and intentional; that the willful and intentional act proximately caused damage; and that actual damage or loss occurred. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 668 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).

■ While disagreeing as to its exact terms, validity, and enforceability, both parties generally concede that an agreement existed between Sanchez, Gonzales, and Gregorio concerning the note and the property at issue. Victor claims that the Sanchez Agreement was based on Sanchez's promise to refrain from assigning the note or foreclosing on the property, thereby allowing Gonzales and Gregorio time to close on the sale to Gomar. In consideration for Sanchez's promises, Gonzales and Gregorio promised to pay Sanchez $9,000.00 by the end of June 2004.[6] The appellees, by contrast, concede that they were aware of an agreement between the parties in which Sanchez promised not to foreclose on the property as long as Gonzales and Gregorio paid the note in full by June 5, 2004. Because the exact terms are in dispute, a material issue of fact exists regarding the nature of the Sanchez Agreement. But it is clear that some type of agreement was made.[7]

■ Victor's fourth amended petition cites two specific occasions of tortious in-

---

6. Victor's response to the appellees' motion for summary judgment included receipts for payments totaling $9,000.00 made by Gonzales to Sanchez.

7. In their motion, and again on appeal, the appellees contend that the promises which Victor claims form the basis of the Sanchez Agreement are not in writing, and therefore violate the statute of frauds as the contract would involve the sale of land. *See* Tex. Bus. & Com.Code Ann. § 26.01 (Vernon 2009). However, a contract held to be unenforceable under the statute of frauds may nevertheless serve as the basis for a tortious-interference claim. *See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 664 (Tex.1990) (citing *Clements v. Withers*, 437 S.W.2d 818, 821 (Tex.1969)).

terference by the appellees: (1) taking an assignment of the note from Sanchez, and (2) foreclosing on the property. Victor claims that the damages suffered as a result of these acts was the rescission of the Gomar sales contract. Looking at the first allegation of interference, it does not follow that the appellees' act of initiating and ultimately completing the sale and assignment of the note proximately caused the failure of Gomar sale. Gonzales's affidavit, attached to Victor's response to the appellees' motion, states that Gregorio was ready to close on the Gomar sale until he learned of the foreclosure from the title agent. Therefore, it was the foreclosure—not the assignment of the note—that caused the rescission of the Gomar sale contract. Because the undisputed facts establish as matter of law that the appellees' purchase of the note was not the proximate cause of the complained-of damages, that could not constitute tortious interference with the Sanchez Agreement. *See Prudential Ins. Co. of Am.,* 29 S.W.3d at 77; *Four Bros. Boat Works,* 217 S.W.3d at 668.

 While it is clear that the appellees' act of foreclosing upon the property did prevent the Gomar sale from closing, it is equally clear that the status of both the appellees and Sanchez had changed by the time the foreclosure occurred. Accordingly, one of two outcomes must have occurred. First, after taking assignment of the note Investeco assumed the rights previously held by Sanchez as the holder of the note, and as the beneficiary of the deed of trust. Consequently, at the time of foreclosure, Investeco was a party to the Sanchez Agreement and incapable of tortiously interfering with it as a matter of law. *See Prudential Ins. Co. of Am.,* 29 S.W.3d at 77–78; *Holloway v. Skinner,* 898 S.W.2d 793, 794–95 (Tex.1995) (Texas law has long recognized that the person who induces the breach of a contract cannot be a contracting party). Alternatively, if Investeco did not take Sanchez's place in the Sanchez Agreement based on the assignment, then the Sanchez Agreement must have terminated by its own terms as Sanchez lacked any authority to perform under the contract by preventing foreclosure of the property. In either case, Investeco could not have interfered with the Sanchez Agreement by foreclosing upon the property as a matter of law.

Therefore the trial court did not err in granting summary judgment on the tortious-interference claim. We overrule Victor's issue on appeal.

### c. Breach of Fiduciary Duty

In his fourth amended petition, Victor asserted a claim for breach of fiduciary duty as to Mekhail, claiming that Mekhail, as trustee, breached a fiduciary duty to Gregorio by foreclosing on the property despite his knowledge of an agreement with Sanchez not to transfer the note or foreclose on the property in order to allow Gregorio to close with the new buyer. The appellees moved for summary judgment on this claim, contending that there was no fiduciary duty as a matter of law. On appeal, Victor does not raise this issue as one on which the trial court erred in granting summary judgment. We find Victor waived any challenge to the trial court's ruling on his fiduciary-duty claim by failing to raise or brief it on appeal. *See* Tex. R.App. P. 38.1. Accordingly, we affirm the granting of summary judgment on his claim for breach of fiduciary duty in favor of the appellees.

### d. Conspiracy

Victor's fourth amended petition also asserted claims of civil conspiracy against Investeco, Mekhail, Sanchez, and Rodriguez. Specifically, Victor alleged that the

defendants conspired amongst themselves to tortiously interfere with the Sanchez Agreement.

▪▪▪▪▪ To establish civil conspiracy, the appellant must show that the appellees had a meeting of the minds on an object or course of action, and that one of the members committed an unlawful, overt act in furtherance of the object or course of action. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex.2005). But since conspiracy is a derivative tort, Victor must show that the appellees were also liable for some underlying tort in order to prevail on this claim. *See Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex.1997)). Because we have already affirmed the trial court's summary judgment as to both tortious interference and breach of fiduciary duty, Victor is without a tort claim upon which to base a cause of civil conspiracy. Therefore we overrule Victor's issue on the summary judgment against his conspiracy claim.

## III. Conclusion

Based on the foregoing reasoning, we affirm the trial court's judgment.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

I agree with the majority's conclusion that Victor Rodarte has perfected appeal in his representative capacity; however, I respectfully disagree with the analysis the majority uses to reach this conclusion.

In determining the capacity in which a party has asserted a claim in the trial court, the focus must be on the party's pleadings. Likewise, in determining the capacity in which a party has appealed from an adverse judgment, the focus must be on the party's notice of appeal. In both instances, this court must construe the operative language liberally. Under a liberal construction of the relevant trial court pleading, Victor Rodarte sued not just in his representative capacity, as the majority concludes, but also in his individual capacity.

In his live trial-court petition, Victor, as plaintiff, did not state that he was suing in his individual capacity or as representative of his brother Gregorio, or both. Both Rodarte brothers (Victor and Gregorio) as well as Domingo Gonzales were named as plaintiffs; however, Victor's capacity was not specified. Rather, Victor was referred to as "Plaintiff Victor Rodarte" with no further explanation. Though the terms "Plaintiff" and "Plaintiffs" are used throughout the petition, these terms are not defined. Victor alleged in his trial court pleading (1) that he "is the lawful agent of real-party-in-interest, Gregorio Rodarte, with respect to all suits arising from the real property in question," (2) that Gregorio "executed special and general power of attorney agreements appointing Victor, as Gregorio's agent with respect to the Property," and (3) that "these power of attorney agreements vest Plaintiff [no specification] with full authority over Gregorio's interest in the Property, including authority to prosecute any and all legal actions relating to the Property." Victor, however, did not state that he was bringing suit in his capacity as agent for Gregorio. No party filed a motion requesting the trial court to compel Victor to show that he had capacity to assert claims in the litigation, nor did any party take any other action to place in issue Victor's capacity to assert such claims.

Well-timed special exceptions to Victor's trial-court pleading would have clarified the capacity issue. However, because no special exceptions were filed or sustained

against the petition, this court must construe the petition liberally to contain any claims that reasonably may be inferred from the language used in the petition. *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354–55 (Tex.1995). Though the majority believes it is clear that Victor sued only on Gregorio's behalf as Gregorio's attorney-in-fact, under a liberal construction of the petition, Victor sued both in his individual capacity and in a representative capacity.

Appellees, relying on *Elizondo v. Texas Natural Resource Conservation Commission,* contend that Victor perfected appeal in his individual capacity only. *See* 974 S.W.2d 928 (Tex.App.-Austin 1998, no pet.). They assert Victor lacks standing in this court because, in his individual capacity, he has no interest in the subject property. *See id.* However, in *Elizondo,* the plaintiff expressly stated in her trial-court petition that she was suing in both her individual capacity and in a representative capacity. *See id.* In contrast to the plaintiff in *Elizondo,* Victor did not expressly address in his trial-court pleading the capacity in which he brought suit. Therefore, the *Elizondo* case is not on point. *See id.*

When Victor appealed the adverse judgment by filing a notice of appeal in this court, he continued to use the same vague terminology he used in his trial court pleading. In his notice of appeal, Victor does not specify the capacity in which he is appealing. Instead, Victor states only that the appellant is "Plaintiff Victor Rodarte"—the same vague term used in the trial court petition to refer to Victor suing in both an individual capacity and as representative of Gregorio. The record reflects that Victor is relying heavily on his representative capacity, and there is no apparent basis upon which Victor could sue in his individual capacity. In this con-

text, the notice of appeal should be deemed sufficient to perfect an appeal by Victor in his representative capacity. *See Warwick Towers Council of Co–Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.,* 244 S.W.3d 838, 839 (Tex.2008) (holding that court of appeals should have reached the merits of insurance company's appellate arguments and that insurance company had made a bona fide attempt to invoke the court of appeals' jurisdiction, even though notice of appeal did not mention the insurance company and referred only to the insurer/subrogor as the appellant). Victor's notice of appeal is not so deficient that it fails to invoke this court's jurisdiction over the disputed claims. Appellees argue that Victor lacks standing because he appealed only in his individual capacity; however, for the reasons stated above, this argument lacks merit.